COURT OF APPEALS OF VIRGINIA


Present:   Judge Haley, Senior Judge Bumgardner and Retired Judge Fitzpatrick[*]
Argued at Alexandria, Virginia


FREDERICK EUGENE RECKER, JR.

                                                        OPINION BY
v.        Record No. 2110-05-4            JUDGE RUDOLPH BUMGARDNER, III
                                                        MAY 9, 2006
PEGGY H. RECKER


                        FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                                        Jeffrey W. Parker, Judge

                Christopher W. Schinstock (Kyle F. Bartol; Gannon & Cottrell, P.C.,
                on briefs), for appellant.

                Catherine M. Bowers (Walker, Jones, Lawrence, Duggan & Savage,
                P.C., on brief), for appellee.


        The trial court entered a qualified domestic relations order defining the division of Frederick

Eugene Recker, Jr.'s civil service pension. He maintains the trial court erred by not reducing the

value of Peggy H. Recker's share by the cost of providing survivor benefits to his second wife. We

hold the trial court correctly interpreted the final decree that divided the pension, and we affirm.

        The parties married August 1, 1970, separated August 1, 1994, and divorced December 18,

1996. The trial court decreed equitable distribution of their marital estate which included granting

the wife 50% of the husband's "gross retirement annuity benefits (prior to any deduction

therefrom)." After the divorce but prior to his retirement, the husband remarried. The second wife

received a survivor benefit as part of the husband's civil service retirement benefit that significantly

---

        [*] Judge Fitzpatrick participated in the hearing and decision of this case prior to the
effective date of her retirement on March 31, 2006, and thereafter by designation pursuant to
Code § 17.1-400(D).

reduced his monthly benefit. It reduced the husband's monthly benefit, which he began to receive August 1, 2005, by 10% or $405.

On June 22, 2005, the wife filed a motion for a qualified domestic relations order, Code § 20-107.3(K)(4), to implement her right to begin receiving her portion of the husband's retirement benefit. She maintained her share was measured by the husband's retirement benefit before it was actuarially reduced by the cost of the second wife's survivor benefit. The husband maintained the wife's share was calculated after the reduction because he had no choice in the pension being reduced when his second wife elected to receive a survivor benefit.

The trial court held, "the expressed intent of the Final Decree was to provide the Wife 50% of the accrued pension before any deductions were taken at the discretion of the Husband." It entered an order decreeing the wife received a share of the larger amount, and the husband appeals.

The parties agree that the issue on appeal is construction of the consent decree entered December 18, 1996. They agree that the wording of the decree is clear and unambiguous and that the intention of the parties is a question of law to be determined from the language of the decree itself.

Paragraph 8 of the decree distributed the parties' retirement and pension assets. It noted that the husband was eligible to receive "retirement annuity benefits through his specific branch of the Federal Government Retirement and Disability System by virtue of his employment with the Federal Government." It recited the parties' agreement:

> The parties agree that the [wife] shall receive fifty percent (50%) of the marital share (as defined below) of the [husband's] gross retirement annuity benefits (prior to any deduction therefrom), including any disability retirement benefits and/or applicable early retirement incentive bonuses, paid in lump sum if, as and when he receives same.

The decree then defined the equation for calculating the marital share of the husband's pension:  the years of service between August 1, 1975 and the date of separation divided by the total years of service.

The decree continued,

> To effectuate the intention of the parties, the [husband] hereby assigns to the [wife] for her sole and separate property, as a property division and not as alimony, fifty percent (50%) of the marital share of the [husband's] retirement annuity benefits to which the [husband] is eligible at date of retirement . . . .

The decree provided that if the husband received early retirement bonuses or retirement disability payments, the wife would get 50% of the additional entitlement.  It required the husband to remit to the wife the balance of any sum that the pension administrator refused to pay her directly.

The husband maintains the term "gross retirement annuity benefits" as used in the decree incorporates the definition given the term "Gross annuity" by the Civil Service Retirement System regulations.  Those regulations define "Gross annuity" as "the amount of monthly annuity payable after reducing the self-only annuity to provide for survivor annuity benefits, if any, but before any other deduction."

The husband asserts that the civil service system is unlike other federal retirement plans because it does not subtract the cost of survivor benefits from an employee's gross income.  He reasons that because the unique civil service definition of "Gross Annuity" stated that no deduction was taken to provide the survivor benefit, his share "if, as and when" received was the smaller monthly payment.  He explains that he did not receive an employee annuity from which the survivor benefit was deducted but a survivor benefit annuity from which the cost was already deducted.

The husband maintains he was not responsible for the reduced benefit.  He contends he did nothing and made no election of benefits that caused the deduction because his second wife had the right to receive a survivor benefit unless she waived it.  The second wife, not the husband,

- 3 -

affirmatively refused to waive receipt of the survivor benefit. Thus, the husband concludes that he was not responsible for any action that reduced the benefit the first wife would receive.

Property settlement agreements are contracts, and the rules of interpretation for contracts in general apply. If the agreement is unambiguous, its meaning and effect are questions of law. Ordinary words are given their ordinary meaning when constructing the contract. Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985).

The final decree makes clear the parties intended to maximize the value assigned to any retirement benefits that the husband would receive from his employment with the federal government. As the trial court found, the decree relied on "conventional definitions" and the definition of "gross annuity" urged by the husband is not a conventional definition. The ordinary meaning of "gross" is "an overall total exclusive of deductions." Webster's Third New International Dictionary 1002 (1993).

The decree added the phrase "prior to any deduction therefrom" to reinforce its intention to give the phrase "gross retirement annuity benefits" its ordinary meaning even though the parenthetical was redundant of that meaning. To further emphasize and illustrate the parties' intention to maximize the valuation, the decree anticipated certain common options available to a federal employee that might be treated as a reduction in an employee's maximum entitlement. In each case, the decree provided against any such unintended or inadvertent reduction in the wife's portion of the retirement benefits.

The term used in the decree, "gross retirement annuity benefits" was not the same as the term "gross annuity" that the husband selects from the civil service regulations. The decree employed its term while discussing the federal retirement system in general and without any reference to the specific system under which the husband elected to retire, the Civil Service Retirement System. Nothing suggested that the decree was using its term in the unusual sense it

- 4 -

carries in the civil service regulations. The term "gross" as used in context within the decree carried its ordinary and conventional meaning: before or without deductions. The decree did not intend to give "gross" a meaning exactly the opposite of its ordinary meaning.

Construed as a whole, the final decree expressed the intention that the wife receive 50% of the husband's accrued pension benefits before any deduction or reduction. Furthermore, the record does not support the husband's assertion that his civil service benefit did not reduce his full benefit to provide the survivor benefit to his second wife. Instead, the record reveals the husband was eligible at the date of his retirement to receive an annuity that was not reduced to provide survivor benefits for his second wife. That amount was reduced for the survivor benefit to arrive at the monthly benefit actually paid.

The Civil Service Retirement System definition of "gross annuity" shows that the cost of a survivor benefit was deducted from the total benefit due the retiree. The definition itself refers to the "self-only annuity" from which the cost of the survivor benefit is deducted to arrive at the monthly payment. The definition upon which the husband bases his claim to a reduced evaluation defines itself as a larger entitlement at retirement that is reduced to provide his second wife with a survivor benefit.

The husband's "Statement of Federal Retirement Benefits," which defined and explained his precise monthly benefits, reflects the same methodology. It stated, "the cost of the survivor benefit was factored into the computation of your gross monthly benefit shown above." That document continued:

> You elected to provide survivor benefits as follows based upon the full amount of your annuity. As noted on your retirement application, you may change your election by filing a new election in writing not later than 30 days after the date of your first regular monthly payment.
> The reduction to provide survivor benefits is made from your basic annual annuity at retirement.

- 5 -

Although the husband argues that he did nothing to reduce his pension except to get remarried, the only support in the record for that assertion was a representation by the husband's attorney made while explaining his position to the trial court.

The husband's statement of retirement benefits made clear that he was entitled to a higher monthly benefit, "the full amount of your annuity." That annuity was reduced to provide his second wife her survivor benefits. Although the cost of the survivor benefit was not reported to the recipient as a deduction, the civil service retirement benefit operates exactly as other retirement annuities. The total value of the benefits earned by the employee at retirement is reduced by the cost of providing a survivor benefit because actuarially the annuity will pay periodic benefits for a longer time. It pays for a period determined by two life expectancies rather than one.

We hold the trial court correctly determined the benefits "to which [husband] is eligible at the date of retirement" and of which the wife received 50%. This case is similar to the situation in Williams v. Williams, 32 Va. App. 72, 526 S.E.2d 301 (2000). The final decree was clear and unambiguous. The wife was to receive 50% of the husband's total pension benefits. When the first qualified domestic relations order, as interpreted by the pension administrator, paid the wife benefits from only one portion of the pension, Code § 20-107.3(K)(4) permitted the trial court to modify the order to effectuate the expressed intent of the original order.

In this case, the trial court had authority under Code § 20-107.3(K)(4) to enter an order to effectuate the expressed intent of the final decree entered December 18, 1996. Its order did not change the substance of the original decree but allowed the wife to receive the amount of retirement benefits previously decreed. We find no error in the trial court's decision.

Both parties request attorney's fees and costs on appeal. We conclude neither party is entitled to attorney's fees and costs. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

Affirmed.