COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, McCullough and Senior Judge Annunziata
Argued at Alexandria, Virginia


JAMES CARLTON CRAIG, JR.

                                                            OPINION BY
v.   Record No. 0785-11-4                   JUDGE ROBERT P. FRANK
                                                      FEBRUARY 7, 2012

THELMA RUTH MARKHAM CRAIG


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Lon E. Farris, Judge

Robin C. Gulick (John C. Clark; Gulick, Carson & Thorpe, P.C., on
briefs), for appellant.

Amy N. Tobias (David M. Levy; Stephens, Boatwright, Cooper,
Coleman & Newton, P.C.; Surovell Isaacs Petersen & Levy PLC, on
brief), for appellee.


James Carlton Craig, Jr., appellant/husband, appeals the trial court's modification of a

Qualified Domestic Relations Order (QDRO), which addressed the division of appellant's civil

service retirement annuity.  He contends the trial court erred by:  (1) determining it had the

jurisdiction to modify that order; (2) allowing Thelma Ruth Markham Craig, wife, to testify about

the terms of the property settlement agreement (PSA), in violation of the parol evidence rule;

(3) determining the intent of the parties without first finding ambiguity in the PSA or the QDRO;

(4) modifying the PSA and the QDRO despite the clear written intent of the parties expressed in the

PSA; and, (5) awarding attorney's fees to wife.  For the reasons stated, we affirm in part and reverse

in part.

## BACKGROUND

The parties were divorced by final decree entered January 29, 2009, which decree affirmed,

ratified, and incorporated the PSA, without being merged into the decree.

The PSA provided, *inter alia*, for the division of husband's pension and retirement benefits:

> 11. <u>HUSBAND'S Pension and Retirement Benefits:</u>  The WIFE shall receive thirty seven and one-half percent (37.5%) of the HUSBAND's gross monthly annuity with the Civil Service Retirement System (hereinafter "CSRS").  The WIFE shall receive the maximum Former Spouse Survivor Annuity (FSSA) available to her under law with respect to the HUSBAND's Civil Service Retirement System annuity.  HUSBAND affirms that he has designated the WIFE as beneficiary of said FSSA annuity and shall at no time change such designation or take any actions which would reduce the FSSA annuity available to her.  Until such time as a court order acceptable for processing has been entered, the HUSBAND shall continue to pay the survivor benefit premium. *The order acceptable for processing shall provide that the survivor benefit shall be deducted from the WIFE's share when she receives her benefits pursuant to that order.*
>
> *   *   *   *   *   *   *
>
> Until such time as the WIFE receives her CSRS benefits directly pursuant to court order, the HUSBAND shall pay to the WIFE directly, as and for a property distribution, the sum of Two Thousand One Hundred and Sixty Three Dollars per month, commencing December 2007, and continuing monthly thereafter, immediately upon the receipt of his CSRS payment.  In the event that the HUSBAND receives any cost of living increases subsequent to December 2007, then his direct payment to the WIFE shall be increased by thirty seven and one-half percent (37.5%) of such increase.

(Emphasis added.)

On April 13, 2009, the court entered a QDRO, which essentially tracked the language of the PSA. It stated, in part:

> B.  The Employee assigns to the Former Spouse to be paid directly from the CSRS or OPM[1] an annuity that equals a sum which is thirty seven and one half percent (37.5%) of the Employee's gross retirement benefits.
>
> *   *   *   *   *   *   *
>
> D.  The United States Office of Personnel Management is directed to pay the Former Spouse's share directly to THELMA

---

[1] Office of Personnel Management.

MARKHAM CRAIG. THELMA MARKHAM CRAIG's share of employee's employee annuity will be reduced by the amount of the costs associated with providing the former spouse survivor annuity awarded in the next paragraph. The Former Spouse shall be responsible for all federal, state and local taxes on her share.

E. Under § 8341(h)(I) of Title 5, United States Code, the Former Spouse is awarded the maximum possible former spouse survivor annuity (55%) under the Civil Service Retirement System. *The Former Spouse's share of the employee's annuity will be reduced by the amount of the cost associated with former spouse survivor annuity benefit awarded in the previous paragraph.* Any cost properly payable by the Former Spouse that is deducted from the Employee's annuity shall be acknowledged by the Former Spouse and promptly reimbursed to the Employee by the Former Spouse.

(Emphasis added.)

Once the QDRO was processed, the Office of Personnel Management (OPM) calculated wife's share of the annuity, based on its interpretation of its regulations defining "Gross Monthly Annuity" (hereinafter GMA).[2] OPM initially subtracted the cost of wife's survivor benefits ($810) from the total amount of the annuity ($8,348). It then multiplied that amount by 0.375 (wife's percentage share). From that amount, $2,826.75, OPM deducted another $810 from wife's share, arriving at a monthly annuity of $2,016.75.

On November 4, 2010, wife filed a motion for entry of court order acceptable for processing and for reimbursement of unpaid benefits, praying that the annuity paid to her by OPM reflect the parties' agreement. Husband responded by contending the trial court lacked jurisdiction under Rule 1:1 and Code § 20-107.3(K)(4) to enter an order inconsistent with the express terms of the original decree.

---

[2] The regulations defined "Gross Annuity" as "the amount of self-only annuity less any applicable survivor reduction, but before any deductions." U.S. Office of Personnel Management CSRS AND FERS HANDBOOK FOR PERSONNEL AND PAYROLL OFFICES, Chapter 5, *Court Orders*, www.opm.gov/retire/pubs/handbook/C005.pdf.

At the hearing on wife's motion, wife testified that, under the PSA, she would receive 37.5% of husband's annuity before any deduction for the survivor costs. Husband did not object to that testimony. Wife then testified that the survivor benefit was to be deducted from her share. Husband objected, based on the parol evidence rule, that wife cannot vary the terms of the PSA unless there is ambiguity. Wife replied that she was simply reciting the language of the PSA. The trial court overruled the objection, finding wife was not attempting to explain the PSA, or the negotiations that led to the agreement, but merely stating what the agreement provided.

Pam Squires testified as an expert in the interpretation of OPM documents. Squires testified that OPM had interpreted the term "GMA" according to their regulations, rather than by the conventional definition of the term. Under those regulations,[3] GMA is the monthly annuity after reduction for the survivor annuity. As such, a reduction occurs prior to applying the former spouse's percentage. After the percentage is applied, OPM deducts an additional $810 for the cost of the survivor annuity. Under OPM's formula, wife would pay 137.5% of the cost of the survivor annuity.

During oral argument, both parties agreed there is no ambiguity in the PSA.

The trial court stated that it was not modifying the divorce decree, but was enforcing the decree and the intent of the parties. The trial court found the intent of the parties was to apply the 37.5% wife's share to the total annuity of $8,348 and, from that amount, to subtract the $810 survivor annuity cost to arrive at wife's share of $2,320.50 per month. The court rejected husband's argument that the parties intended for wife to pay the $810 twice.

Further, the trial court awarded wife attorney's fees, based on the "Costs of Enforcement" provision of the PSA, which allows for such fees in the enforcement of the PSA.

This appeal followed.

---

[3] The regulations were not introduced into evidence.

ANALYSIS

JURISDICTION AND INTENT

Appellant challenges the trial court's determination of the intent of the parties. Husband also contends the trial court erred in ruling it had jurisdiction to amend the QDRO, because more than twenty-one days had elapsed since the entry of the final decree of divorce. See Rule 1:1. Further, appellant argues the provisions of Code § 20-107.3(K)(4), which allow the court to modify a pension order "so as to effectuate the expressed intent of the order," is not applicable in this case. He reasons that because the terms of the PSA clearly set forth the expressed intent of the parties, there is no need to modify the QDRO and thus Code § 20-107.3(K)(4) is not applicable.

We must first resolve whether the trial court erred in its determination of the parties' intent before we can resolve whether Code § 20-107.3(K)(4) applies.

Intent is a question to be determined by the fact finder. Cirrito v. Cirrito, 44 Va. App. 287, 305, 605 S.E.2d 268, 276 (2004) (citing Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991)). While both parties concur that the PSA is unambiguous in its terms relating to the division of the pension, our inquiry does not end there.

The PSA stated that the survivor benefit shall be deducted from wife's share. The question before us is whether OPM's interpretation of that language is consistent with the expressed intent of the parties. If that interpretation is incorrect, then the trial court was correct in modifying the QDRO under Code § 20-107.3(K)(4).

"In Virginia[,] property settlement agreements are contracts and subject to the same rules . . . of interpretation as other contracts." Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986) (citing Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)). As such,

> "it is the function of the court to construe the contract made by the
> parties, not to make a contract for them. The question for the court

- 5 -

is what did the parties agree to as evidenced by their contract.  The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Irwin v. Irwin, 47 Va. App. 287, 293, 623 S.E.2d 438, 441 (2005) (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)).

Furthermore, on appeal, our standard of review for property settlement agreements is the same as for other contracts.

In construing the terms of a property settlement agreement, just as in construing the terms of any contract, we are not bound by the trial court's conclusions as to the construction of the disputed provisions.  If all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this court.

Bergman v. Bergman, 25 Va. App. 204, 211-12, 487 S.E.2d 264, 268 (1997) (internal quotations and citations omitted).

If the terms of the agreement are unambiguous, their meaning and effect are questions of law.  Ordinary words are given their ordinary meaning when constructing the contract.  Tiffany, 1 Va. App. at 15, 332 S.E.2d at 799.

Recker v. Recker, 48 Va. App. 188, 629 S.E.2d 191 (2006), provides guidance in our analysis.  Recker involved very similar facts and issues to those before us in this appeal.  The issue in Recker was whether the term "gross retirement annuity benefits," as used in the consent decree, incorporated the definition assigned to the term "gross annuity" by CSRS regulations. The effect of the CSRS definition reduced the former spouse's benefits.  In affirming the trial court's findings, we stated, "the decree relied on 'conventional definitions' and the definition of 'gross annuity' urged by the husband is not a conventional definition.  The ordinary meaning of

'gross' is 'an overall total exclusive of deductions.' Webster's Third New International Dictionary 1002 (1993)." Id. at 192, 629 S.E.2d at 193-94.

We concluded that the parties intended for the term to carry its ordinary meaning, rather than the specific CSRS definition:

> Nothing suggested that the decree was using its term in the unusual sense it carries in the civil service regulations. The term "gross" as used in context with the decree carried its ordinary and conventional meaning: before or without deductions. The decree did not intend to give "gross" a meaning exactly the opposite of its ordinary meaning.

Id. at 193, 629 S.E.2d at 194.

Husband attempts to distinguish Recker, arguing the consent decree in that case did not specifically refer to the CSRS, but only made a general reference to benefits "through [husband's] specific branch of the Federal Government Retirement & Disability System." Thus, husband concludes the reference to the CSRS in the instant case expressed the parties' intent to incorporate all regulations and definitions of the CSRS. We find this argument unavailing. The mention of CSRS refers only to the source of the annuity payments. There is no evidence that either party was aware of the CSRS's rules, regulations, or definitions, nor intended to incorporate them by reference.

The PSA clearly stated "the survivor benefit shall be deducted from the wife's share . . . ." In order to accept husband's position, we must conclude that wife agreed to have the survivor annuity costs ($810) deducted twice from her share. That, we cannot do. Rather, we must accept the plain language of the PSA, as did the trial court. Wife testified husband paid her $2,318.50 per month prior to her receiving benefits from CSRS. This sum reflects, within two dollars, the amount that should have been paid to wife had the $810 only been deducted from the wife's share.

We conclude, based on the clear language of the PSA, that the parties intended that the costs of the survivor annuity should be deducted only once, and only after multiplying the entire monthly annuity by 0.375. The result of this calculation is wife's share. The $810 would then be deducted from wife's share.

We find that the trial court did not err in concluding that wife should receive the 37.5%, thereafter deducting the costs of the survivor annuity.

A question regarding jurisdiction is a matter of law. "We review the trial court's statutory interpretations and legal conclusions *de novo*." Navas v. Navas, 43 Va. App. 484, 487, 599 S.E.2d 479, 480 (2004) (citing Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998)).

Our jurisdictional inquiry is whether Code § 20-107.3(K)(4) applies in this case. We hold that it does, because the QDRO was modified in order to "conform its terms so as to effectuate the expressed intent of the order."

Any "[s]uch modification, however, must be 'consistent with the substantive provisions of the original decree' and not 'simply to adjust its terms in light of the parties' changed circumstances.'" Williams v. Williams, 32 Va. App. 72, 75, 526 S.E.2d 301, 303 (2000) (quoting Caudle v. Caudle, 18 Va. App. 795, 798, 447 S.E.2d 247, 249 (1994)); see also Newsome v. Newsome, 18 Va. App. 22, 26, 441 S.E.2d 346, 348 (1994).

> The purpose of the legislative enactment of Code § 20-107.3(K)(4) was "to protect the interests of pension recipients from the unintended consequences of improperly or incomplete drafted pension orders . . . ." Report of the Family Law Section of the Virginia State Bar on Equitable Distribution of Property in Divorce Proceedings, House Document No. 19, at 15-16 (1991). The statutory reservation permits "the court to revise its orders to comply with language required by federal law to effectuate the intended pension award, but not to substantively change the pension award itself." Id. The House document recognized that "the integrity and enforceability of such pension division orders, and the receipt by the spouse of such award in the future, relies on

the present proper drafting of such orders in order to comply with applicable federal law." Id. Reservation of jurisdiction is necessary for "the future performance of such orders, and the receipt by spouse of [his or her] expected pension awards . . . ." Id.

Irwin, 47 Va. App. at 297 n.8, 623 S.E.2d at 443 n.8.

Because we have determined that the OPM's definition of "GMA" does not reflect the expressed intent of the parties, the trial court properly modified the QDRO to "confirm [sic] its terms so as to effectuate the expressed intent of the order." The OPM's calculation did not comply with the intent of the parties in their agreement. Thus, the trial court had jurisdiction under Code § 20-107.3(K)(4) to modify the order, and, as such, Rule 1:1 did not apply. The trial court did not err in modifying the QDRO.

ATTORNEY'S FEES

Appellant further contends the trial court erred in awarding attorney's fees to wife, which is contrary to the express language of the property settlement agreement. We agree.

The PSA provided, in part:

24. Costs of Enforcement: The parties agree that any costs, including but not limited to counsel fees, court costs, investigation fees and travel expenses, incurred by a party in the successful enforcement of any of the agreements, covenants, provisions of this agreement, whether through litigation or other action necessary to compel compliance herewith shall be borne by the defaulting party. Any such costs incurred by a party in the successful defense to any action for enforcement of any of the agreements, covenants or provisions of this agreement shall be borne by the party seeking to enforce compliance.

In applying those provisions, the trial court found that wife's motion to modify the QDRO was an action to enforce the parties' intent as established in both the PSA and the final decree.

Code § 20-109(C) bars the trial court from awarding counsel fees except in accordance with the property settlement agreement. See also Rutledge v. Rutledge, 45 Va. App. 56, 67, 608

- 9 -

S.E.2d 504, 509 (2005) ("Because Code § 20-109(C) restricts the trial judge's jurisdiction such that he could enter 'no decree or order directing the payment of . . . counsel fee . . . except in accordance with that . . . contract,' we hold that the trial judge did not err in refusing to award to the wife her attorney's fees.").

> Marital property settlements . . . are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms." Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002). According to the rules of construction, "courts cannot read into contracts language which will add to or take away the meaning of words already contained therein." Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

Rutledge, 45 Va. App. at 64, 608 S.E.2d at 508.

The plain terms of paragraph 24 of the PSA state that there are two predicates for an award of attorney's fees: (1) successful enforcement of the agreement; and (2) a defaulting party. At oral argument, wife contended that appellant was a defaulting party because he did not agree with wife that OPM had used an incorrect calculation.

Paragraph 7 of the PSA obligated husband to "cooperate and take all necessary steps to facilitate the entry of the [QDRO] order." Nothing in the record suggests he failed to do so. Husband did not violate the terms of the PSA. Although husband did not prevail on appeal, his failure to settle a contested claim is not a default. Husband, in fact, abided by the terms of the original QDRO.

"'The noun "default" is defined as a "failure to do something required by duty or law."'" Stroud v. Stroud, 54 Va. App. 231, 239, 677 S.E.2d 629, 632 (2009) (quoting Clevert v. Soden, Inc., 241 Va. 108, 111, 400 S.E.2d 181, 183 (1991) (quoting Webster's Third New International Dictionary 590 (1986))). Husband's position was not a failure to perform a legal or contractual duty as set forth in the PSA.

Even assuming the trial court correctly characterized the proceeding as one of enforcement, husband was not a defaulting party. It was OPM's actions, and not husband's, that prompted the proceeding. Therefore, we conclude the award of attorney's fees against appellant was contrary to the language of the PSA. The trial court erred in awarding such fees.

PAROL EVIDENCE

Appellant next argues the trial court erred in allowing wife to testify, contradicting the terms of the unambiguous PSA, and thus violating the parol evidence rule.

This argument is premised on the following exchange between wife's counsel and wife, after wife was given a copy of the PSA.

> Q. And what was that agreement?
>
> A. That I would receive 37-1/2 percent of his annuity before any deduction for the survivor cost.
>
> *   *   *   *   *   *   *
>
> Q. And how was the cost of that survivor benefit supposed to be paid?
>
> A. It was supposed to be deducted from my portion.

At that point, appellant objected to that testimony, asserting wife was attempting to vary the terms of the PSA.

In overruling the objection, the trial court found wife was only stating the terms of the agreement, not explaining the negotiations that led to the agreement. "If the terms of the parties' agreement are contained in a clear explicit writing, that writing is the sole memorial of the contract and the sole evidence of the agreement. In that event . . . parol evidence . . . could not be used to explain the written contractual terms." Cascades North Venture L.P. v. PRC Inc., 249 Va. 574, 579, 457 S.E.2d 370, 373 (1995) (citing Amos v. Coffey, 228 Va. 88, 91-92, 320 S.E.2d 335, 337 (1984)).

It is equally well settled that "'"[i]n controversies between two parties to a contract, parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument.'"" Robinette v. Robinette, 4 Va. App. 123, 127, 354 S.E.2d 808, 810 (1987) (quoting Amos, 228 Va. at 91-92, 320 S.E.2d at 337 (quoting Godwin v. Kerns, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941))).

However, wife's testimony did not attempt to alter the terms of the PSA. On the contrary, the terms of the PSA stated, in relevant part: "The WIFE shall receive thirty seven and one-half percent (37.5%) of the HUSBAND's gross monthly annuity with the Civil Service Retirement System . . . . The order acceptable for processing shall provide that the survivor benefit shall be deducted from the WIFE's share when she receives her benefits pursuant to that order." This was precisely what wife testified.

As the trial court correctly noted, wife was merely stating the terms of the agreement. We find no error in the trial court's evidentiary ruling.

APPELLATE ATTORNEY'S FEES

We deny wife's request for appellate attorney's fees and costs. Upon reviewing the record and the briefs submitted in this appeal, we conclude that husband's contentions are not frivolous, and he prevailed in part. See Duva v. Duva, 55 Va. App. 286, 303, 685 S.E.2d 842, 851 (2009) (citing Gottlieb v. Gottlieb, 19 Va. App. 77, 95, 448 S.E.2d 666, 677 (1994)).

CONCLUSION

For the aforementioned reasons, we vacate the trial court's award of attorney's fees against appellant. We find no error in the trial court's modification of the QDRO, as it had

jurisdiction to do so.  We also conclude the trial court correctly allowed wife to testify as to the

terms of the PSA.

Affirmed in part,
reversed and
vacated in part.
