PRESENT: All the Justices

MARIE DOLORES JACKSON

OPINION BY
JUSTICE WILLIAM C. MIMS
v. Record No. 181229
November 27, 2019

DENNIS MICHAEL JACKSON

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider the extent of a circuit court's jurisdiction to modify a pension distribution order under Code § 20-107.3(K)(4).

I.  BACKGROUND AND MATERIAL PROCEEDINGS BELOW

Marie Dolores Jackson and Dennis Michael Jackson married in June 1974.  They obtained a final decree of divorce *a vinculo matrimonii* in January 2011.  In the decree, the circuit court ratified the parties' agreement as to equitable distribution, which they had earlier confirmed in a hearing before a commissioner in chancery.  For the purposes of distributing some marital property, the parties agreed to apply August 16, 2004 as the date of their separation.

In accordance with the parties' agreement, the decree awarded Marie benefits from Dennis' military pension.  The decree recited that the pension was already being paid out and that

> on the date of separation [it] was paying $3229.28 per month.  [Marie] shall receive fifty percent (50%) of the marital share of this pension, and the parties shall use the agreed date of separation of August 16, 2004 in the formula which calculates her share of this pension. . . .  [Marie] shall also receive the Survivor's Benefit of this pension and any and all costs associated with providing the Survivor's Benefits to her will be deducted from her share of the pension after its allocation between the parties . . . .  In the event [Dennis] applies for and receives a disability determination it shall not reduce the entitlements of [Marie] to the amount she is entitled to receive monthly from this pension . . . .

(emphasis omitted).)

The same day it entered the decree, the circuit court also entered an order captioned "Order Dividing Military Pension" ("ODMP").  The ODMP ordered that "[t]o accomplish the division of the marital property between the parties in accordance" with the decree, Marie "is assigned an annuity in the monthly amount of $1,053.39."  It also stated that the court retained jurisdiction under Code § 20-107.3(K)(4) "to make any additional orders necessary to effectuate and enforce" the ODMP.  Both parties signed the decree and the ODMP without objection.

In January 2017, Marie filed motions to reopen the proceeding and for entry of an order amending the ODMP.  She asserted that the $1,053.39 monthly payment awarded to her in the ODMP did not represent 50% of Dennis' monthly benefit for two reasons.  First, she claimed that Dennis' monthly benefit had increased over the years from cost-of-living-adjustments ("COLAs") but that her monthly payment had not increased because the ODMP had awarded her a fixed dollar amount.  Second, she claimed that the costs of allocating the survivor benefit to her had been miscalculated when determining the fixed amount in the ODMP in the first place, and further that those costs would end after a period of time but that the ODMP made no provision for increasing her fixed amount thereafter.  She argued that the ODMP therefore impermissibly altered the distribution made in the decree and that the court should enter a new order awarding her 50% of the monthly benefit.

At a hearing on the motions, Dennis asserted through counsel that, under Department of Defense guidelines, the pension administrator would not accept an order directing it to subtract the cost of a survivor benefit from one party.  Consequently, the parties had to calculate it and subtract it from Marie's share before specifying an amount to award her in the ODMP or else the administrator would not accept it.  He also asserted that the decree specifically referenced August 16, 2004 as the parties' separation date and the amount of Dennis' monthly pension

2

benefit as of that date because the parties affirmatively intended to calculate the specific dollar amount of Marie's payment through the 50% formula (minus the cost of the survivor benefit) as of that specific date and as applied to that specific amount. Consequently, he asserted, the parties had agreed, and the decree had intended, to exclude Marie from any subsequent COLA increases.

At the conclusion of the hearing, the court ruled that the ODMP was not inconsistent with the decree. It stated that the fact that both parties signed it without objection was relevant but not dispositive. It ruled that the ODMP merely implemented the 50%-minus-survivor-benefit-cost formula agreed to by the parties and ratified in the decree. It concluded that because the ODMP was not inconsistent with the decree, it would not amend the ODMP. The court later entered a final order memorializing its ruling.

Marie thereafter appealed to the Court of Appeals. In a published opinion, *Jackson v. Jackson*, 69 Va. App. 243 (2018), that court ruled that, regardless of any of the circuit court's other rulings, it had lacked jurisdiction to amend the ODMP on Marie's January 2017 motion because it was final under Rule 1:1, which limits a court's jurisdiction to 21 days after entry of a final judgment, order, or decree. The Court of Appeals noted that the circuit court had entered the ODMP, with both parties' consent, on the same day as the decree, so the ODMP was entered within the 21-day period for modifying the decree. In the view of the Court of Appeals, the ODMP therefore controlled to the extent there were any differences between it and the decree, so Code § 20-107.3(K)(4) did not apply. It concluded that if Marie believed that the amount awarded to her in the ODMP was inaccurate, she could either have sought a correction within 21 days of its entry or appealed. She did neither.

3

The Court of Appeals further ruled that Code § 20-107.3(K)(4) does not permit a circuit court to alter the substance of a pension distribution order after the 21-day period provided by Rule 1:1.  Rather, it merely permits a court to modify such an order if the original order was rejected by a plan administrator, so that it may enter a revised order that conforms to the plan's requirements.  In the view of the Court of Appeals, by signing the ODMP without objection when it was entered, Marie had represented to the circuit court at that time that the order correctly implemented the distribution ordered in the decree.  The Court of Appeals therefore affirmed the circuit court's judgment.

We awarded Marie this appeal.

## II.  ANALYSIS

Marie's appeal to this Court comprises three assignments of error.  In the first, she asserts that the Court of Appeals erred by holding that the circuit court lacked jurisdiction under Code § 20-107.3(K)(4) to amend the ODMP to give effect to the decree because the ODMP was entered within 21 days of the decree, so if there was any discrepancy between them, the ODMP controlled.  In the second, she asserts that it erred by holding that Code § 20-107.3(K)(4) did not permit the circuit court to modify the ODMP to give effect to the decree.  In the third, she asserts that it erred by holding that Code § 20-107.3(K)(4) does not apply when a circuit court still has jurisdiction within Rule 1:1's 21-day period.  Each of these assertions challenge the Court of Appeals' interpretation of the statute, which we review de novo.  *May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 13 (2019).

When we interpret a statute,

> our primary objective is to ascertain and give effect to legislative intent, as expressed by the language used in the statute. When the language of a statute is unambiguous, we are bound by the plain meaning of that language. And if the

4

language of the statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

*Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (citations and internal quotation marks omitted).

"When a statute is clear and unambiguous, [we] may look only to the words of the statute to determine its meaning. [We] may not consider rules of statutory construction, legislative history, or extrinsic evidence." *Eberhardt v. Fairfax Cnty. Emps' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194 (2012) (internal citations and quotation marks omitted). However, "it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal. A statute is not to be construed by singling out a particular phrase." *Id.* at 194-95.

Code § 20-107.3(K) provides that a circuit court "shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to" perform four specific acts. One of these specific acts is identified by subdivision (4) as the authority and jurisdiction to

> [m]odify any order entered in a case . . . intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits pursuant to the United States Internal Revenue Code or other applicable federal laws, *only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order*.

(Emphasis added).

It is clear from the plain meaning of this language that the General Assembly intended to confer upon circuit courts power that they previously did not have. The question is, what is the scope of the new power? To answer that question, we must first review courts' general jurisdiction in equitable distribution, which is the subject of Code § 20-107.3.

5

Unless the issue of equitable distribution is bifurcated and a circuit court expressly reserves jurisdiction to decide it later as provided by Code § 20-107.3(A), a final decree of divorce is a final decree within the meaning of Rule 1:1. A party dissatisfied with it must challenge it in the circuit court within 21 days of its entry or through a timely appeal. *Toomey v. Toomey*, 251 Va. 168, 171 (1996). An order implementing the distribution of a retirement asset under the terms of such a decree is similarly subject to Rule 1:1. If a party believes that the order inaccurately implements the provisions of the decree or an equitable distribution order, he or she must likewise challenge the order in the circuit court within 21 days or appeal. *Fahey v. Fahey*, 24 Va. App. 254, 256-57 (1997) (citing *Rook v. Rook*, 233 Va. 92, 94–95 (1987)).

Code § 20-107.3(K)(4) permits a circuit court to modify a pension distribution order after the 21-day period has elapsed, but only for the limited purposes stated in the statutory language. It does not extend jurisdiction beyond the 21-day period for other purposes, such as to adjust the division of property if circumstances subsequent to the entry of the decree have changed in ways the parties failed to foresee and bring to the court's attention before the decree or order was entered, or before the periods for modification or appeal elapsed.

Rather, the statutory language reveals that the General Assembly recognized two possible problems and intended to provide circuit courts with the powers necessary to remedy both of them. First, it understood that due to the complexity of and variation among retirement plan rules and regulations, a circuit court may inadvertently enter an initial pension distribution order that is unacceptable to the plan administrator in a particular case. For example, the order may omit a provision the plan requires or include one it prohibits. Second, the General Assembly anticipated that a circuit court may enter such an order that, through errors or ambiguities in its drafting, leads a plan administrator to later interpret and apply it in a way that produces a result

6

inconsistent with the one intended by the parties and the court when the final decree was entered. To rectify the first problem, the legislature conferred jurisdiction required for the circuit court to correct the language of the initial order after it has become final under Rule 1:1 so that the plan administrator will accept it. To rectify the second, it conferred jurisdiction for the court to clarify the language of the initial order after it has become final, removing whatever error or ambiguity led the plan administrator to implement and apply it contrary to its intended result. Neither of these remedies includes jurisdiction to change the substance of the original division of property.

This rule is well-settled under the precedents of the Court of Appeals. *E.g.*, *Irwin v. Irwin*, 47 Va. App. 287, 296 n.8 (2005) (holding that "the purpose . . . of Code § 20-107.3(K)(4) was to protect the interests of recipients from the unintended consequences of improperly or incomplete drafted pension orders. The statutory reservation permits the court to revise its orders to comply with the language required . . . to effectuate the intended pension award, but not to substantively change the pension award itself") (internal citation and quotation marks omitted)).[1]

---

[1] *See also Turner v. Turner*, 47 Va. App. 76, 80 (2005) (citing *Caudle v. Caudle*, 18 Va. App. 795, 798 (1994)) (holding that Code § 20-107.3(K)(4) confers authority "to make the terms of the retirement or pension provisions 'effectuate the intent of' the original decree" but not "to modify a final divorce decree simply to adjust its terms in light of the parties' changed circumstances"); *Hastie v. Hastie*, 29 Va. App. 776, 781 (1999) (holding that "orders that alter critical terms [of a final decree], such as timing or amount of payments, exceed the authority granted under Code § 20-107.3(K)(4)"); *Wilson v. Wilson*, 25 Va. App. 752, 758 (1997) (holding that "the trial court was without authority [under Code § 20-107.3(K)(4)] to substantively modify its original order equitably distributing husband's pension benefits"); *Fahey*, 24 Va. App. at 254, 257 (holding that "the court was without authority [under Code § 20-107.3(K)(4)] to substantively modify its order simply to redress [a] changed circumstance"); *Newsome v. Newsome*, 18 Va. App. 22, 26 (1994) (holding that "the entry of an order purporting to change the substance of the original order or provide an interest in a pension that was not provided in the order would contravene the intent of the legislature in enacting" Code § 20-107.3(K)(4) (internal quotation marks omitted)).

Marie argues, however, that this interpretation contravenes the statutory language, which states that under Code § 20-107.3(K)(4) courts may modify a pension distribution order "to revise or conform its terms so as to effectuate the expressed intent of the order." This phrase, she contends, confers broad authority allowing courts to modify pension distribution orders whenever they diverge from the parties' intent. She does not argue that the statute is ambiguous. Rather, she asserts that the way the Court of Appeals has applied it in this case is inconsistent with its earlier interpretations, particularly in *Craig v. Craig*, 59 Va. App. 527, 534 (2012), and *Williams v. Williams*, 32 Va. App. 72, 76 (2000).

The Court of Appeals' opinion in *Craig* is consistent both with its other precedents and with the present case. In *Craig*, the pension distribution order clearly awarded the wife 37.5% of the husband's monthly pension benefit, minus the cost of allocating a survivor benefit to her. However, the plan administrator calculated the amount it paid to her by deducting the survivor benefit's cost twice, both before and after it applied the percentage to the husband's monthly benefit. 59 Va. App. at 533-34. The circuit court ruled that the plan administrator's calculated payment failed to produce the result intended by the final decree and entered a new pension distribution order. *Id.* at 535. The Court of Appeals affirmed. *Id.* at 538

*Williams* is factually distinguishable from the case now before us. In *Williams*, an amended final decree awarded the wife 50% of the husband's pension payment, which comprised two separate classes of benefits. Due to a drafting error, the pension distribution order referred only to one class of benefits and the pension administrator paid the wife 50% of the payment arising from only that class. 32 Va. App. at 74-75. The pension distribution order did not effectively implement the division awarded by the amended decree. Rather than entering a new pension distribution order, the circuit court, purportedly under the jurisdiction conferred

8

by Code § 20-107.3(K)(4), entered an order further amending the amended decree to direct the husband to pay the wife 50% of the other class of benefits from the date of the initial amended decree. *Id.* at 76. The Court of Appeals affirmed, ruling that the amendment to the initial amended decree

> was not a substantive modification. The trial court never modified the percentage or amount due the wife. The modification accomplished what the amended final [decree] directed, but which the [pension distribution order] did not fully accomplish. The modification changed no substantive rights but merely adjusted procedural steps to effect the expressed intent of the [decree]. The trial court could have made the procedural adjustments by amending the [pension distribution order], but Code § 20–107.3(K)(4) also permitted it to make them by modifying the amended final decree.

*Id.*

The case now before us does not involve the amendment of a final decree or equitable distribution order, so we do not consider whether Code § 20-107.3(K)(4) permits such modifications. This case raises only the question of modifying a pension distribution order. As both *Craig* and *Williams* relate to that question, each case is consistent with the Court of Appeals' other rulings that any modification a court makes under the authority of Code § 20-107.3(K)(4) must be limited to implementing the intent of the final decree or equitable distribution order, without affecting the substance of the division of property it awarded.

Although Marie also asserts that the ODMP fails to implement the final decree's award of 50% of Dennis' monthly benefit, the circuit court found otherwise. There is ample basis in the record to support its finding: the language in the decree specifying the date of separation for the purposes of dividing the pension and the amount of the monthly benefit at that time, as well as the provision that the amount would not change if Dennis later sought and obtained a disability

9

determination.[2]  Taken together, these points reflect an intent to award Marie 50% of Dennis'

monthly benefit as of August 16, 2004, which was implemented by the fixed dollar amount

specified in the ODMP.  The Court of Appeals also noted the fact that both parties signed the

ODMP without objection on the same day as the decree and ruled that they thereby represented

their understanding that it implemented the decree to their satisfaction at that time.  *Jackson*, 69

Va. App. at 251.  Consequently, in the words of the Court of Appeals, Marie's 2017 motion "did

not request an order to *effectuate* the division of the pension [but] to *change* the division."  *Id.*

(emphasis in original).

 We agree with the Court of Appeals' reasoning.  Because Marie's request sought a

substantive change to the distribution of the pension benefit, rather than to give effect to the

intent reflected in the decree, her motion fell outside the scope of the court's jurisdiction as

expanded by Code § 20-107.3(K)(4).  The circuit court therefore did not err in denying it and the

Court of Appeals did not err in affirming the denial.

 Marie also argues that the Court of Appeals mistakenly ruled that, because the ODMP

was entered during the 21-day period within which the circuit court had jurisdiction under Rule

1:1 to modify the decree, any discrepancy between the ODMP and the decree was, in effect, a

modification of the decree.  She notes, and Dennis agrees, that language in the ODMP expressly

states that its purpose was to implement, not to modify, the distribution ordered in the decree.

She further argues that, if left undisturbed, this precedential ruling will mean that Code § 20-

107.3(K)(4) can never apply to a pension distribution order entered within 21 days of a final

_____

 [2] Although Marie attempted to adduce evidence at the hearing on her motion that she
contends would support her view of the parties' intent when the decree and order were signed
and entered, the circuit court ruled that most of it was inadmissible.  The Court of Appeals
affirmed that ruling, 69 Va. App. at 251, and she does not assign error to it here.

decree or equitable distribution order because then there could never be a discrepancy between the two.

The Court of Appeals ruled that the ODMP "controls even if [its] description of [Marie's] portion of [Dennis'] pension as a fixed monthly payment of $1,053.39 differs from the . . . decree's use of a percentage.  In entering the agreed upon pension order the trial court decreed that $1,053.39 was the wife's share of husband's pension." *Jackson*, 69 Va. App at 248.  It is unclear whether the court was holding, as Marie contends, that the ODMP was a modification of the decree or simply that, as discussed above, the parties' unanimous agreement to the ODMP on the same day as the decree reflected their agreement that the ODMP accurately implemented the distribution awarded by the decree.  However, for the avoidance of doubt, we agree with the parties that by its express language, the parties intended the ODMP only to implement, not to modify, the decree.

Although Rule 1:1 provides courts the opportunity to modify, vacate, or suspend their final judgments, orders, and decrees within 21 days after entry, not every order a court enters in a case within that period will have that effect.  *See*, *e.g.*, *City of Suffolk v. Lummis Gin Co.*, 278 Va. 270, 274, 277 (2009) (holding that a final order awarding a nonsuit and purporting to reserve jurisdiction to consider an award of attorney's fees did not modify, vacate, or suspend the nonsuit order for the purpose of its finality under Rule 1:1); *James ex rel. Duncan v. James*, 263 Va. 474, 478-79, 482 (2002) (holding that orders, which required a party to appear and show cause why she should not be held in contempt and continuing the proceedings for that purpose, entered within the 21-day period following a final order awarding a nonsuit, did not modify, vacate, or suspend the final order for purposes of Rule 1:1).  Because the ODMP expressly stated the parties' intent only to implement the decree, and contained no language indicating that the

11

court was modifying, vacating, or suspending it, we conclude that the ODMP did not have the latter effect. However, while the ODMP and the decree therefore *could* have been inconsistent, we agree with the circuit court and Court of Appeals that they were not, as we have ruled above.

Finally, Marie also argues that the Court of Appeals erred by ruling that Code § 20-107.3(K)(4) has no effect during the 21-day period within which courts may modify, vacate, or suspend a final judgment, order, or decree, because nothing in the statute prevents a court from acting during that time under the jurisdiction the statute confers.

The Court of Appeals ruled that "Code § 20-107.3(K)(4) does not apply while a court retains control of the order pursuant to Rule 1:1." *Jackson*, 69 Va. App. at 249. As discussed above, the General Assembly enacted Code § 20-107.3(K)(4) for the purpose of conferring upon courts jurisdiction and authority that they previously did not have. Under Rule 1:1, a court may modify an order within 21 days for *any* purpose, without limitation. That includes modifying one "for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order." Code § 20-107.3(K)(4). By contrast, after the 21-day period elapses, courts have no authority to disturb their prior rulings, unless the General Assembly has created a statutory exception to the policy of finality implemented by Rule 1:1. *Commonwealth v. Morris*, 281 Va. 70, 77 (2011). Code § 20-107.3(K)(4) is such an exception.

Because a court has no need of the jurisdiction extended by the statute to modify an order for a limited purpose during the 21-day period within which it has jurisdiction to modify it for any purpose, the General Assembly did not intend the statute to apply during the 21-day period. Although nothing in the statutory language expressly prohibits a court from acting under Code

§ 20-107.3(K)(4) during the 21-day period within which it could also act under Rule 1:1, "[t]he purpose for which a statute is enacted is of primary importance in its interpretation or construction. A statute often speaks as plainly by inference, and by means of the purpose that underlies it, as in any other manner." *Norfolk S. Ry. Co. v. Lassiter*, 193 Va. 360, 364 (1952) (internal quotation marks omitted). Thus, while it may be more precise to say that the limited jurisdiction conferred by Code § 20-107.3(K)(4) is eclipsed by the broader jurisdiction conferred by the Rule during the 21-day period, the difference in formulation has no practical effect in this case.

## III. CONCLUSION

For the reasons set forth above, we conclude that there is no reversible error in the Court of Appeals' judgment affirming the circuit court's ruling. We therefore affirm.

*Affirmed.*