UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Decker and Senior Judge Annunziata
Argued at Lexington, Virginia


ANN M. HUTCHINSON

MEMORANDUM OPINION[*] BY
v.      Record No. 0392-14-3          JUDGE GLEN A. HUFF
DECEMBER 9, 2014

JOHN E. HUTCHINSON, III


FROM THE CIRCUIT COURT OF NELSON COUNTY
J. Michael Gamble, Judge

Edward D. Barnes (Anne Brakke Campfield; Brandy M. Poss;
Barnes & Diehl, P.C.; The DeFazio Law Firm, P.C., on briefs), for
appellant.

Brian R. Moore (Phillips, Morrison, Johnson, and Ferrell, on
brief), for appellee.


Ann M. Hutchinson ("appellant") appeals an order of the Circuit Court of Nelson County

("trial court") directing appellant to escrow $1,400,000 pursuant to the final divorce decree and

ordering each party to pay his/her own attorney's fees.  Appellant presents the following

assignments of error on appeal:

1.    The trial court erred in requiring that [a]ppellant escrow the
amount of $1,400,000 . . . because it was an impermissible
modification of the parties' Agreement because Virginia
Code Section 20-109(C) prohibits the court from amending
the Agreement and Final Decree . . . [and] it was an
impermissible modification of the parties' Final Decree in
contravention of Rule 1:1 of the Rules of the Supreme
Court of Virginia which prohibits a modification after 21
days from the date of the Final Decree.

2.    The trial court erred in finding that no funds are due to the
[a]ppellant from the sale of the Merritt-Hutchinson
properties ["MH properties"] until all the [MH properties]

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

have been sold because pursuant to the parties' Final Decree of Divorce and Agreement, the properties are titled solely in the [a]ppellant's name and she is the owner of the funds until all the [MH properties] have been sold.

3. The trial court erred in failing to award the [a]ppellant her attorney's fees and costs in this matter because she substantially prevailed, the [a]ppellee pursued remedies not provided for in the parties' Agreement, and because the [a]ppellee filed a show cause petition even though he admitted that the [a]ppellant was not in contempt of court.

4. The [a]ppellant should be awarded her attorney's fees and costs related to this appeal proceeding.

In response, John E. Hutchinson, III, ("appellee") presents three assignments of cross-error on appeal:

1. The trial court erred when it held that a condition precedent is created by the word "all" as used in the phrase "if, as and when all the [MH properties] sell" and as a result failed to order [appellant] to immediately pay $1.4 million plus the legal rate of interest thereon from the date she received the proceeds from the sale of a portion of all the properties. . . .

2. The trial court erred when it held that any interest or accretion in value on the $1,400,000.00 to be held in escrow shall be the property of [appellant] because the agreement plainly states that only the proceeds remaining after payment of the obligation are her sole and separate property.

3. The trial court erred when it failed to award [a]ppellee his attorney's fees and costs because he substantially prevailed and the [a]ppellant was in violation of the parties' agreement.

Appellee also requests attorney's fees and costs on appeal. For the following reasons, this Court reverses in part and affirms in part the rulings of the trial court.

## I. BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). "That principle requires us to 'discard the evidence' of [appellant] which conflicts, either directly or inferentially, with the evidence presented by [appellee] at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)). So viewed, the evidence is as follows.

Appellant and appellee were married on June 3, 1953. On September 1, 2006, the parties were divorced pursuant to final decree of divorce entered by the trial court. The final divorce decree stated "that the parties have entered into an oral separation agreement by recorded testimony dated May 30, 2006 ["agreement"], pursuant to § 20-155 . . . ."

At the May 30, 2006 hearing, the parties agreed that "all the property referenced and referred to as Merritt-Hutchinson Resort in Lynch Station, Virginia, Campbell County, . . . shall be transferred to and become the separate property of [appellant] as of today." Moreover, the parties indicated that "[appellant] will pay to [appellee] $1.4 million without interest. The evidence of that obligation will be this agreement and a final decree of divorce, that obligation will be in the final decree of divorce, without interest, to be paid to him if, as, and when all the [MH properties] sell." Moreover, in the final divorce decree, both parties agreed to the following terms:

> [Appellant] shall pay to the [appellee] ONE MILLION FOUR HUNDRED THOUSAND and 00/100 dollars ($1,400,000.00), if, as, and when all of the real estate that makes up the aforementioned [MH properties] is sold. In the event that the [appellee] is not living when all of the property has been sold, then the ONE MILLION FOUR HUNDRED THOUSAND and 00/100 dollars (1,400,000.00) shall be paid to the parties' children per stirpes. No interest whatsoever shall accrue on the ONE MILLION FOUR HUNDRED THOUSAND and 00/100 dollars ($1,400,000.00). The ONE MILLION FOUR HUNDRED THOUSAND and 00/100 dollars (1,400,000.00) will be paid at the closing of the properties and the remaining net proceeds from the sale shall be the [appellant's] sole and separate property.

On June 7, 2012, appellee submitted a petition for civil contempt to the trial court alleging that "on October 22, 2011 [appellant] sold without any notice to [appellee] all of said property with the exception of a 43.904 acre tract of unimproved real estate . . . . The unsold real estate is the only real estate left in the [MH properties] and is assessed by the County at $70,200.00." Specifically, appellee indicated that appellant "did not pay any of the net proceeds of the sale to [appellee] or notify him of the sale . . . ." On June 15, 2012, the trial court entered a show cause order as to "why she should not be punished for contempt."

On April 30, 2013, appellant filed a motion to dismiss show cause because appellee was not due any money pursuant to agreement because all of the MH properties were not sold. Additionally, appellant requested that she be reimbursed all attorney's fees and costs she incurred while defending the show cause.

On June 3, 2013, the trial court heard evidence regarding appellee's show cause motion and also took appellant's motion to dismiss under advisement. At trial, both parties stipulated that the final divorce decree was not ambiguous and no parol evidence would be admitted. Furthermore, appellee indicated "I want to say that I don't believe that she's in contempt of court unless and until Your Honor rules that she has the duty to give him the 1.4 million, or to escrow the 1.4 million . . . ." Accordingly, the trial court informed the parties that "I'm going to rule that this is going to be a proceeding to interpret the divorce decree today." After hearing arguments from both parties, the trial court granted both parties additional time to file briefs.

On July 23, 2013, the trial court issued its opinion letter. Specifically, the trial court found "the obligation of [appellant] pursuant to the property settlement agreement is to pay [appellee] ONE MILLION FOUR HUNDRED THOUSAND DOLLARS ($1,400,000) from the sale of the [MH properties] when all the properties have sold. However, $1,400,000 of the proceeds from the properties already sold shall be escrowed." Additionally, the trial court

- 4 -

directed that "[a]ny interest that accrues from the escrowed money shall be paid to [appellant] at the time the $1,400,000 is actually distributed to [appellee]." The trial court ruled that each party was responsible for his/her own attorney's fees and costs.

Subsequently, both parties filed motions to reconsider. On October 22, 2013, the trial court heard arguments on the parties' motions. In denying each party's motion, the trial court held "the word 'all' in the first sentence convinces me that the $1,400,000.00 cannot be distributed to [appellee] until all of the property has been sold." Furthermore, the trial court indicated

> Next, the third sentence provides that the $1,400,000.00 "will be paid at the closing of the properties and the remaining net proceeds from the sale shall be [appellant's] sole and separate property." This statement clearly anticipates that the proceeds from each sale will be paid to someone other than [appellant]. If it is not paid to [appellant], then the money must be paid in escrow.

On February 4, 2014, the parties presented proposed orders to the trial court. On the same day, the trial court entered an order memorializing the rulings contained in the July 23, 2013 and October 23, 2013 opinion letters. Additionally, the trial court dismissed the show cause against appellant. Specifically, the trial court held that "no funds are due to [appellee] from the sale of any of the [MH properties], pursuant to the parties' Final Decree of Divorce and Agreement, until all the [MH properties] have been sold." Additionally, the trial court ruled that appellant "shall escrow $1,400,000 of the proceeds from the [MH properties] that have already been sold." This appeal followed.

## II. ANALYSIS

### A. Escrow Award

On appeal, appellant contends the trial court erred in requiring that appellant escrow the amount of $1,400,000. Appellant argues that the trial court's decision to escrow the amount was an impermissible modification of the parties' agreement in that Code § 20-109(C) prohibits the trial court from amending the final divorce decree. Additionally, appellant asserts that the escrow requirement is in contravention of Rule 1:1 of the Rules of the Supreme Court of Virginia, which prohibits a modification of the final divorce decree after 21 days.

In response, appellee contends the trial court did not err because the order dealt with an issue that was not addressed by the parties' agreement.[1] Conversely, in an assignment of cross-error, appellee asserts the trial court erred when it held that a condition precedent was created by the word "all" as used in the phrase "if, as and when all the [MH properties] sell" and, therefore, erred in not ordering appellant to immediately pay $1,400,000 plus the legal rate of interest. Accordingly, this Court first addresses whether the trial court properly interpreted the property settlement agreement outlined in the final divorce decree.

### 1. Terms of the Final Divorce Decree & Agreement

"Property settlement agreements are contracts, and the rules of interpretation for contracts in general apply." Recker v. Recker, 48 Va. App. 188, 192, 629 S.E.2d 191, 193 (2006). Thus, "[o]n appeal, the Court reviews a trial court's interpretation of a contract *de novo*." Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 42 (2006) (emphasis added) (citing Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)).

---

[1] Appellee argues that the trial court's order answered the question "What is to be done with sales proceeds when some but not all of the property is sold; if the obligation is to be paid at closing but [appellee] may only be paid after all the property is sold; and [appellant] is only entitled to receive any remaining net proceeds?"

The final divorce decree incorporated terms stipulated by the parties including, in relevant part, "[Appellant] shall pay to the [appellee] ONE MILLION FOUR HUNDRED THOUSAND and 00/100 dollars ($1,400,000.00), if, as, and when all of the real estate that makes up the aforementioned [MH properties] is sold." In interpreting the contractual language, the trial court determined that "no funds are due to [appellee] from the sale of any of the [MH properties], pursuant to the parties' Final Decree of Divorce and Agreement, until all the [MH properties] have been sold" but appellant "shall escrow $1,400,000 of the proceeds from the [MH properties] that have already been sold."

When interpreting an agreement that "is unambiguous, its meaning and effect are questions of law. Ordinary words are given their ordinary meaning when construing the contract." Recker, 48 Va. App. at 192, 629 S.E.2d at 193 (citing Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)). Moreover, in Virginia, "'[i]t is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning.'" Cabral v. Cabral, 62 Va. App. 600, 609-10, 751 S.E.2d 4, 9 (2013) (quoting TravCo Insur. Co. v. Ward, 284 Va. 547, 552, 736 S.E.2d 321, 325 (2012)). Further, "[t]hat meaning . . . derives from the text as well as the context of the agreement." Id.

Additionally, a contract "is not ambiguous merely because the parties disagree as to the meaning of the terms used." TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002). Contracts, however, "are construed as written without adding terms that were not included by the parties." Id. (citing Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)).

Thus, "'when considering the meaning of any part of a contract, we will construe the contract as a whole.'" Cabral, 62 Va. App. at 610, 751 S.E.2d at 9 (quoting Doctors Co. v. Women's Healthcare Assocs., 285 Va. 566, 572, 740 S.E.2d 523, 526 (2013)). Consequently,

"'[t]he contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties.'" Hale v. Hale, 42 Va. App. 27, 31, 590 S.E.2d 66, 68 (2003) (quoting Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)).

In the current matter, the language of the final decree indicates that appellant "shall pay to the [appellee] ONE MILLION FOUR HUNDRED THOUSAND and 00/100 dollars ($1,400,000.00), if, as, and when *all* of the real estate that makes up the aforementioned [MH properties] is sold." (Emphasis added). The parties stipulated to the terms of the agreement in the final divorce decree, and elaborated

> [appellant] will pay to [appellee] $1.4 million without interest. The evidence of that obligation will be this agreement and a final decree of divorce, that obligation will be in the final decree of divorce, without interest, to be paid to him if, as, and when all the [MH properties] sell.

While both parties stipulated that the agreement is not ambiguous, that stipulation is not binding upon us. Bergman v. Bergman, 25 Va. App. 204, 211, 487 S.E.2d 264, 267-68 (1997) ("whether a writing is ambiguous is a matter of law, not fact . . . [t]hus we are not bound by the trial court's conclusions"). Nevertheless, upon consideration of the terms at issue, this Court agrees that the words used are not ambiguous and are susceptible to a plain meaning interpretation. Accordingly, we further agree that no parol evidence would have been needed or appropriate to determine the meaning of the parties' agreement. Applying the plain meaning of the words used by the parties in the context of their agreement, we hold that appellant is not required to pay appellee $1,400,000 until all of the MH properties are sold.

Appellee, however, contends in his assignment of cross-error that the trial court erred when it held that a condition precedent was created by the word "all" as used in the phrase "if, as and when all the [MH properties] sell" and, therefore, failed to order appellant to immediately

pay $1,400,000 plus the legal rate of interest. In support of his argument, appellee cites to a string of Virginia cases that utilize "if, as, and when" language and contends that such language means "gradual payments as installment payments are received." These cases are distinguishable, however, because they pertain to retirement benefits and do not utilize the "all" language, which is critical in the current matter.[2]

In the current matter, the "if, as, and when" language must be read in conjunction with "all," as part of the whole agreement. See Hale v. Hale, 42 Va. App. 27, 31, 590 S.E.2d 66, 68 (2003) ("'The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties.'" (quoting Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983))). Consequently, appellant is only required to deliver the $1,400,000 "if, as, and when all the [MH properties] sell." Accordingly, appellee's argument is unsupported by the plain language of the agreement.

The trial court's requirement that appellant escrow $1,400,000 of the proceeds from the MH properties that have already been sold, however, is unsupported by the plain language of the agreement and divorce decree. The court may not add terms or conditions that were not included by the parties. See TM Delmarva Power, 263 Va. at 119, 557 S.E.2d at 200 ("Contracts are construed as written, without adding terms that were not included by the parties." (citing Wilson, 227 Va. at 187, 313 S.E.2d at 398)). The final divorce decree does not provide any instruction on whether the proceeds from the partial sale of the properties must be escrowed. Rather, the

---

[2] See generally McGinniss v. McGinnis, 49 Va. App. 180, 186-87, 638 S.E.2d 697, 700 (2006) (appellee cites to this Court's "deferred distribution approach" for retirement accounts wherein the trial court awards a percentage of the marital share of the pension and payment is made only as retirement benefits are paid); Dailey v. Dailey, 59 Va. App. 734, 738, 722 S.E.2d 321, 323 (2012) (the relevant language stated "shall receive fifty percent (50%) of the marital share of the Husband's gross retirement pay if as and when received by the Husband"); Recker, 48 Va. App. at 191, 629 S.E.2d at 193 (the agreement stated "benefits and/or retirement incentive bonuses, paid in lump sum if, as, and when he receives the same").

final divorce decree and agreement instruct that the $1,400,000 shall be delivered to appellee "when *all* of the real estate that makes up the aforementioned [properties] is sold." (Emphasis added). Moreover, both parties agreed that appellant is under no requirement to sell the MH properties. Consequently, under the terms of the agreement, appellant is not required to deliver the $1,400,000 if she is unable or unwilling to sell all of the MH properties.

Accordingly, by supplementing the contract with the requirement that appellant escrow the $1,400,000 amount, the trial court effectively required appellant to deliver her separate property before all of the MH properties were sold. This interpretation adds terms that were not included by the parties and contradicts the original intention of the parties that the $1,400,000 shall be delivered when all of the MH properties have been sold. "'It is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning.'" Cabral, 62 Va. App. at 609-10, 751 S.E.2d at 9 (quoting Ward, 284 Va. at 552, 736 S.E.2d at 325). The final divorce decree contains no reference to any procedure or instruction for escrowing the $1,400,000; therefore, the trial court erred when it incorrectly modified the parties' agreement. See Cave Hill Corp. v. Hiers, 264 Va. 640, 646, 570 S.E.2d 790, 793 (2002) ("In order to find such requirement, one would have to insert words into the writing contrary to the elementary rule that the function of the court is to construe the contract made by the parties, not to make a contract for them.").

### 2. Code § 20-109(C)

Appellant next contends that because the escrow requirement is contrary to the express terms of the parties' agreement, Code § 20-109(C) prohibits the court from ordering the escrow of the $1,400,000. Appellee argues that Code § 20-109(C) does not apply to the current matter because the trial court's ruling dealt with an issue that was not addressed within the final divorce decree.

Code § 20-109(C) states,

> In suits for divorce . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.

Moreover, Code § 20-109(C) applies to the equitable distribution of property. Parra v. Parra, 1 Va. App. 118, 128, 336 S.E.2d 157, 162 (1985). "Specifically, to the extent that the parties have already stipulated to a particular disposition of their property, the court may not decree an equitable distribution award that is inconsistent with that contract." Id. at 128, 336 S.E.2d at 162-63. "If divorce litigants know that they may repudiate, with impunity, valid property settlement agreements in hopes of getting a better result from the court, or because they no longer wish to honor their commitments, the usefulness and validity of all such contracts will be lessened." Id. at 129, 336 S.E.2d at 163.

As previously determined, the trial court incorrectly modified the parties' agreement by adding the requirement that appellant escrow $1,400,000 before all of the properties were sold. The parties' agreement and the entirety of the record are silent of any indication that the parties intended for an escrow provision to be included in the agreement. Accordingly, by inserting a provision outside of the terms of the agreement, the trial court has effectively amended the parties' agreement in contravention of Code § 20-109(C). Furthermore, "[t]o hold otherwise would not only fail to give full effect to the property division statutes, but would also fail to support Virginia's public policy in favor of prompt resolution of property disputes in divorce cases through voluntary court-approved agreements." Id.

Consequently, the trial court violated Code § 20-109(C) when it added the escrow requirement to the final divorce decree and agreement. Accordingly, this Court finds that the trial court erred in modifying the final divorce decree and agreement.

### 3. Rule 1:1

Appellant also argues that the trial court erred by modifying the final divorce decree in contravention of Rule 1:1 of the Rules of the Supreme Court of Virginia. Specifically, appellant argues that the trial court's modification occurred more than seven years after the trial court entered the parties' final divorce decree. Appellee contends, however, that the trial court's modification is exempted pursuant to Code § 20-107.3(K).

Rule 1:1 provides "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Code § 20-107.3, however, provides continuing jurisdiction in certain situations pertaining to equitable distribution. Specifically, Code § 20-107.3(K) provides,

> The court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to: . . . 2. Punish as contempt of court any willful failure of a party to comply with the provisions of any order made by the court under this section.

In the current matter, appellee originally filed a petition for civil contempt asserting that the appellant had not followed the terms of the final divorce decree. Consequently, the trial court entered a show cause against appellant as to why appellant had not followed the terms of the final divorce decree. The central issue at the underlying contempt and show cause proceeding was the interpretation of the provisions in the final divorce decree. Accordingly, as the interpretation of the divorce decree was an underlying issue in the contempt hearing, the trial

court informed the parties that the trial court would "interpret the divorce decree today." While this Court finds that the trial court erred in its interpretation of the parties' agreement, the trial court nevertheless possessed continuing authority and jurisdiction to effectuate and enforce the decree of divorce. Code § 20-107.3(K). Thus, the trial court did not act in contravention of Rule 1:1 when it endeavored to "interpret the divorce decree."

## B. Separate Property

Next, appellant asserts that the trial court erred in finding that no funds were due to appellant from the sale of the MH properties until all the MH properties had been sold. Specifically, appellant contends that, pursuant to the final divorce decree, the MH properties are appellant's separate property and she is the owner of the funds until all the properties have been sold. Appellee argues, however, that appellant's arguments are procedurally barred under Rule 5A:20(c).[3] Conversely, in his assignment of cross-error, appellee asserts that the trial court erred when it held that any interest or accretion in value on the $1,400,000 to be held in escrow shall be the property of appellant because the agreement plainly stated that only the proceeds remaining after payment of the obligation were appellant's sole and separate property.

On appeal, "[a]bsent the necessity to consider extrinsic evidence, 'appellate courts review trial court interpretations of contractual texts *de novo* because we have an equal opportunity to consider the words within the four corners of the disputed provision.'" Vilseck v. Vilseck, 45

_____

[3] Appellee's procedural argument is without merit. Rule 5A:20(c) provides "The opening brief of the appellant shall contain: . . . A statement of the assignments of error with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." In her opening brief, appellant provides references to her objections before the trial court. Specifically, appellant "objects to the Court's finding that no funds are due to her from the sale of any of the [MH properties] until all the [MH properties] have been sold." Accordingly, appellant's argument is not waived under Rule 5A:20(c).

Va. App. 581, 588 n.3, 612 S.E.2d 746, 749 n.3 (2005) (quoting Smith v. Smith, 43 Va. App. 279, 288 n.2, 597 S.E.2d 250, 255 n.2 (2004)).

Additionally, "contracts must be considered as a whole 'without giving emphasis to isolated terms.'" TM Delmarva Power, 263 Va. at 119, 199 S.E.2d at 200 (quoting Am. Spirit Insur. Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001)). Moreover, "'[w]hen two provisions of a contract seemingly conflict, if, without discarding either, they can be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole, this should be done.'" Plunkett, 271 Va. at 168, 624 S.E.2d at 42 (quoting Ames v. Am. Nat'l Bank of Portsmouth, 163 Va. 1, 39, 176 S.E. 204, 217 (1934)). Further, "'[t]he contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties.'" Cabral, 62 Va. App. at 610, 751 S.E.2d at 9 (quoting Hale, 42 Va. App. at 31, 590 S.E.2d at 68).

The final divorce decree indicates that appellant "shall receive all property referenced and referred to as the [MH properties] . . . which includes all property the parties own jointly or separately in Virginia, *as her sole and separate property*." (Emphasis added). Furthermore, the final divorce decree states "[appellant] shall pay to the [appellee] ONE MILLION FOUR HUNDRED THOUSAND and 00/100 dollars ($1,400,000.00), if, as, and when all of the real estate that makes up the aforementioned [MH properties] is sold." Moreover, on May 30, 2006, the parties stipulated to the following terms, "all the property referenced and referred to as [MH properties] in Lynch Station, Virginia, Campbell County . . . shall be transferred to and become the separate property of [appellant] today." At the same hearing, the parties further stipulated that "[appellant] will pay to [appellee] $1.4 million without interest. The evidence of that obligation will be this agreement and a final decree of divorce, that obligation will be in the final decree of divorce, without interest, to be paid to him if, as, and when all the [MH properties]

- 14 -

sell." Lastly, in an effort to clarify the terms more, appellant indicated "[t]he $1.4 million obligation of [appellant] is going to be paid solely from the [MH properties'] net sales proceeds, off the top. In other words, it would be if, as and when the closing occurs at closing."

In reviewing the contract as a whole, without giving undue emphasis to an isolated term, we find that the $1,400,000 remains appellant's separate property until all of the properties sell. The final divorce decree specifically indicates that the MH properties are appellant's separate and sole property. Pursuant to the terms of the agreement on May 30, 2006, appellant is required to pay the $1,400,000 "if, as, and when all the [MH properties] sell." This issue was clarified when appellant reiterated, and counsel for appellee agreed, that "it would be if, as and when the closing occurs." Accordingly, the plain language of the agreement states that the $1,400,000 remains appellant's separate and sole property until closing on all the MH properties. Currently, appellant has not sold a 43.904-acre tract of the properties; therefore, all of the MH properties have not sold. Consequently, appellant is currently under no contractual obligation to deliver the $1,400,000 to appellee because under the terms of the agreement it remains her sole and separate property.

Additionally, appellee's assignment of cross-error that the trial court erred by awarding appellant interest on the $1,400,000 is not supported by the terms of the parties' agreement and is mooted by this Court's rulings. Moreover, the final divorce decree states, "[n]o interest whatsoever shall accrue on the ONE MILLION FOUR HUNDRED THOUSAND and 00/100 dollars." Appellee supports his position by arguing that the "agreement plainly states that only the proceeds remaining after payment of the obligation are her sole and separate property." To the contrary, the parties stipulated that all the MH properties shall "become the separate property of [appellant] *as of today*." (Emphasis added). Likewise, the parties agreed that "[appellant] will pay to [appellee] $1.4 million *without interest*. The evidence of that obligation will be this

- 15 -

agreement and a final decree of divorce, that obligation will be in the final decree of divorce, *without interest*, to be paid to him if, as, and when *all* the [MH properties] sell." (Emphasis added).

The agreement designated the MH properties as appellant's separate property and did not require appellant to deliver $1,400,000 to appellee until all the MH properties sold. Therefore, appellee's assignment of cross-error is not supported by the parties' final divorce decree and agreement.

## C. Attorney's Fees

Appellant asserts that the trial court erred in failing to award appellant attorney's fees and costs in this matter because she substantially prevailed, appellee pursued remedies not provided for in the parties' agreement, and because appellant was not in contempt of court. In his assignment of cross-error, appellee responds by asserting that the trial court erred when it failed to award appellee attorney's fees and costs because he substantially prevailed and appellant was in violation of the parties' agreement. Appellee argues he should be awarded fees because the trial court dismissed his petition for civil contempt without prejudice should appellant fail to comply with the trial court's order that appellant place $1,400,000 in escrow. Accordingly, both parties argue that they substantially prevailed before the trial court.

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). Moreover, "[t]he key to a proper award of counsel fees is reasonableness under all the circumstances." Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996) (citing McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985)). Furthermore, "[t]he trial court has discretion to compensate a party for costs and attorney's fees incurred as a result of the litigation." Taylor v. Taylor, 27 Va. App. 209, 217,

497 S.E.2d 916, 920 (1998). "Rather than following a statutory scheme, in determining whether to award attorney's fees the trial court considers 'the circumstance of the parties,' Barnes v. Barnes, 16 Va. App. 98, 106, 428 S.E.2d 294, 300 (1993), and the 'equities of the entire case.' Davis v. Davis, 8 Va. App. 12, 17, 377 S.E.2d 640, 643 (1989)." Id.

In the current matter, the trial court denied both parties' requests for an award for attorney's fees. In denying both motions, the trial court indicated "[b]ecause there has been no breach of the agreement, but only an effort to have the court interpret their agreement, I deny the award of attorney's fees to either side." On appeal, both parties argue that because they prevailed at the lower court level, they should be awarded attorney's fees and costs. Notably, "[t]he key to a proper award of counsel fees is reasonableness under all the circumstances." Lightburn, 22 Va. App. at 621, 472 S.E.2d at 285 (citing McGinnis, 1 Va. App. at 277, 338 S.E.2d at 162). The underlying proceedings were necessary to interpret the agreement and the final divorce decree, however, as the trial court noted, no party was in breach of the agreement. The trial court did not abuse its discretion in denying the parties' requests for an award of attorney's fees and costs.

Accordingly, this Court finds that the trial court did not err by denying both parties' motions for attorney's fees and costs. This Court also denies an award of attorney's fees and costs for both parties on appeal.

### III. CONCLUSION

This Court finds that the trial court erred in requiring that appellant escrow the amount of $1,400,000 because it was an impermissible modification of the parties' agreement, and therefore was in violation of Code § 20-109(C). Additionally, this Court holds that the trial court erred in finding that appellant was not entitled to the proceeds of sale until all the properties were sold because, under the terms of the agreement, the properties are appellant's separate property.

Furthermore, this Court finds that the trial court did not err by holding that the "all" language of the agreement created a condition precedent.  Moreover, the issue of interest accruing on undistributed proceeds of sale is rendered moot by this Court's rulings.  Lastly, this Court finds that the trial court did not abuse its discretion in denying attorney's fees and costs for both parties, and this Court does likewise as to the appeal.  Accordingly, this Court reverses in part and affirms in part the rulings of the trial court.

<u>Affirmed in part,</u>
<u>reversed in part.</u>