COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Chafin and AtLee
Argued at Lexington, Virginia

PETER ANTHONY DELUCA

MEMORANDUM OPINION* BY
v.       Record No. 1560-18-3        JUDGE RICHARD Y. ATLEE, JR.
AUGUST 27, 2019

TRACIE ONDICH DELUCA


FROM THE CIRCUIT COURT OF AMHERST COUNTY
J. Michael Gamble, Judge Designate

Seth C. Weston (Law Office of Seth C. Weston, PLC, on briefs), for
appellant.

Brian R. Moore (The Moore Law Firm, PLLC, on brief), for
appellee.


Peter Anthony DeLuca ("husband") appeals the decision of the Circuit Court of Amherst

County that held him in contempt of court for failure to pay spousal support to Tracie Ondich

DeLuca ("wife").[1]  On appeal, husband assigns twelve errors to the circuit court's rulings.

Additionally, wife sets forth three assignments of cross-error.  For the reasons that follow, we

affirm in part and reverse in part.

I. BACKGROUND

"[W]e view the evidence in the light most favorable to the prevailing party, granting it the

benefit of any reasonable inferences."  Congdon v. Congdon, 40 Va. App. 255, 258 (2003).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We recognize that "former husband" and "former wife" would be more accurate, but we
use less cumbersome titles in this memorandum opinion for ease of reference.

Husband and wife married on October 3, 1992, and they had one child together. On January 25, 2008, husband and wife entered into a property settlement agreement ("PSA"). The parties legally divorced on January 3, 2013, and the PSA was incorporated into, but not merged with, the final decree of divorce.

Relevant to this appeal, the PSA requires husband to pay the mortgage on the marital home, which was to be titled solely in wife's name. Paragraph 4 of the PSA states that "[h]usband shall support [w]ife in the manner to which she is accustomed and is currently being supported, recognizing the need of [w]ife to educate and nurture [the] child." Paragraph 6 provides that wife

> shall receive a fifty-percent (50%) share of all of [h]usband's
> military retirement pay and benefits. She shall be entitled to her
> legal share of any and all additional pay and benefits due her,
> having been in the marriage for more than fifteen years of
> [h]usband's active-duty service time for retirement.

Additionally, the parties agreed that each party would pay his or her own attorney's fees.

A. Events Leading to the First Appeal – DeLuca 1

On May 28, 2013, wife filed a motion to show cause, alleging that husband had failed to comply with the spousal support obligations in the PSA and a declaratory judgment action asking the circuit court to interpret the PSA. Because the PSA did not set a specific dollar amount of spousal support, the circuit court ordered an evidentiary hearing to allow it to perform a retrospective analysis to determine whether husband had complied with the PSA.

After hearing the evidence, the circuit court determined that the relevant time period was the year prior to the parties entering the agreement. During that time, wife received an average of $4,373 each month in support from husband. Thus, the circuit court concluded that $4,373 was the amount the parties intended as the spousal support obligation under the PSA. Husband

paid less than that each month from May 4, 2010 through April 1, 2014. Relying on the numbers in Exhibit E presented by wife, the circuit court set the arrearages at $121,976.

The circuit court asked wife's attorney to prepare an order consistent with its ruling. The proposed order stated that husband owed "$4,373.00 net per month after taxes" and that husband had failed to meet his support obligation "in the net amount after taxes of $121,976.00." Before entering the order, the circuit court informed the parties that it had crossed out "after taxes" in both places. The order stated that it was a final order on the issue of support but that the circuit court took the issue of contempt under advisement.

Husband appealed to this Court. In an unpublished opinion, a panel of this Court held that the agreement was unambiguous and the plain meaning of the PSA required husband to pay "a sum certain in monthly spousal support."[2] DeLuca v. DeLuca, No. 1158-14-3, at *8 (Va. Ct. App. May 19, 2015) ("DeLuca 1"). It affirmed the circuit court's award of $4,373 per month.

### B. Events Leading to the Second Appeal – DeLuca 2

While DeLuca 1 was pending before this Court, husband voluntarily retired from his position with the military. He began receiving his military retirement pay, and, as required under the PSA, wife began receiving $4,608.25 monthly, her fifty-percent share of husband's pension. Simultaneous with his retirement, husband stopped paying spousal support, leading wife to file her second motion to show cause.

Husband argued that he should receive a monthly credit against his spousal support obligation each month for the amount of wife's share of the pension payment. He argued that the spousal support was not supposed to be a sum certain but rather was intended to support a certain

---

[2] Husband assigned four errors in DeLuca 1. This Court addressed only the first issue, finding that the other three were procedurally defaulted.

lifestyle. According to husband, the parties intended that the retirement payment would replace the spousal support to support wife in that lifestyle. Wife argued that the retirement payment was intended as a separate obligation that was part of the equitable distribution of marital assets, not spousal support.

The circuit court initially ruled in favor of husband, finding that he was entitled to a credit. The circuit court noted that wife's interpretation would result in wife receiving nearly the entire amount of husband's retirement pay, which it deemed a "tortured construction of the agreement."

Wife filed a motion to reconsider. The circuit court granted the motion and withdrew its prior ruling, finding that husband was not entitled to a credit because the PSA did not contain language linking the two provisions, nor did it use the word "credit." The circuit court noted that it made the ruling "with great reluctance" because the "financial impact doesn't seem right," but that the court was legally bound to enforce the terms agreed upon by the parties.

Additionally, the circuit court recalculated the arrearages and stated that husband was not required to pay the state and federal taxes on the spousal support, an issue that arose during the hearing on the motion to reconsider. As it had before, the circuit court took the issue of contempt under advisement.

Husband again appealed the decision to this Court. Prior to oral arguments, a panel of this Court asked the parties to provide supplemental briefing on whether it had jurisdiction over the appeal since the circuit court did not adjudicate the issue of contempt. Ultimately, the panel determined it did not have subject matter jurisdiction because the circuit court's order was not final. The order lacked finality because it took the contempt issue under advisement and thus did not dispose of the whole case. See DeLuca v. DeLuca, No. 1249-16-3, at *2 (Va. Ct. App. Mar. 7, 2017) (unpublished order) ("DeLuca 2"). Husband argued that the order in DeLuca 1

similarly lacked finality, but, because the issue was beyond the scope of the appeal and no motion had been filed, this Court declined to address it.

## C.  Events Leading to the Current Appeal

In response to the ruling in DeLuca 2, husband filed two motions with the circuit court. In the first motion, he asked the circuit court to declare DeLuca 1 void *ab initio* for lack of subject matter jurisdiction.  He argued that the DeLuca 1 order contained the same lack of finality as the order in DeLuca 2.  The circuit court denied husband's motion, noting that DeLuca 2 was unpublished and did not address DeLuca 1 and therefore did not require voiding DeLuca 1.  Because this Court had addressed the merits in DeLuca 1, the circuit court determined that it meant either "explicitly or implicitly . . . the Court felt that it had jurisdiction in that matter."

Husband's second motion asked the circuit court for leave to file a late motion for declaratory judgment.  He argued that the declaratory judgment action was necessary because he would have no way to appeal the PSA interpretation rulings if the court did not hold him in contempt.  Husband contends he did not want to relitigate issues; he only wanted the circuit court to issue an order incorporating all of its prior orders into the declaratory judgment action.  The circuit court denied the motion, deeming it unnecessary to issue an order about orders long since issued.

Wife filed a third motion to show cause arguing that husband still was not paying spousal support and also was not paying the entire mortgage payment.  On October 18, 2017, the circuit court ruled on all three motions to show cause.  It determined that husband was not guilty of contempt on the first motion to show cause because he was unaware of the exact amount of support owed.  Nor was he in contempt on the second motion to show cause because he had a good faith legal argument about the retirement pay as a credit against the spousal support and

because the opinion in DeLuca 1 had not yet been issued. The circuit court did find husband guilty of contempt on wife's third motion to show cause. The circuit court found that husband's average monthly income was between $10,000 and $11,000 per month. When he did not pay spousal support, he had $1,100 left over after his other expenses. Additionally, husband was paying his attorneys $3,000 per month, which could be reduced to meet his support obligation. Although husband may not have been able to pay the entire amount, the circuit court determined he could have paid at least some of the support obligation. The circuit court sentenced him to thirty days in jail, and it set a hearing to determine husband's current financial circumstances, calculate the arrearages, and establish a payment schedule. If husband paid his obligations from October 2017 through the date of the hearing, the circuit court would suspend the jail sentence.

Husband testified at the hearing that he had worked as a consultant for various projects. He presented a spreadsheet showing his income from each consulting job and his retirement pay since 2014. Husband's attorney argued that husband could only afford to pay a few hundred dollars per month towards the arrearages. During his testimony, however, husband stated that he already owed wife about $7,700 per month, and, when it came to arrearages, "he would ask to try and keep th[e combined total] to something under $8,500 per month." The circuit court concluded that husband had earned $135,926 from employment over the past eighteen months, which averaged $7,551 per month. Based on the combination of his earned income and retirement pay, the circuit court ordered husband to pay $2,000 per month towards the arrearages.

During the hearing, husband pointed out an apparent math error in the calculation of arrearages in the May 22, 2014 order. According to him, the arrearages should have been

$91,377.01 rather than the $121,976 that the circuit court set—a difference of $30,598.99.[3] Husband argued that the circuit court should use its equitable power to apply a credit to the May 22, 2014 arrearage. Wife argued that the husband had not objected to the calculation at the time the order was entered. Furthermore, the order was final and had already been affirmed in DeLuca 1. The circuit court took that issue under advisement in order to review the documents.

Eventually, the circuit court determined that it had made a mathematical error. The circuit court awarded husband a credit of $30,598.99 noting that it was not fair that husband bear the full burden for the miscalculation. But, because husband had not objected at the time and out of fairness to wife, the circuit court awarded the credit to the current arrearage, not to the May 22, 2014 arrearage. Wife could then collect interest on the $121,976 arrearage pursuant to Code § 20-78.2, while husband ultimately received the credit. Both parties objected.

At the hearing, husband also argued that interest on the arrearages requires a final order, and he again argued that the May 22, 2014 order was not a final order. Therefore, interest should only apply to the arrearages after the final order of contempt was entered, not from the date the circuit court calculated the arrearages in each temporary order. The circuit court determined that Code § 20-78.2 allowed interest on the arrearages in orders setting out arrearages if the total arrearage was greater than the total of three months of support. Thus, from April 25, 2014 to March 1, 2016, the arrearages of $121,967 would earn interest at 6%. From March 1, 2016 to October 10, 2017, the updated arrearages of $185,229 would earn interest at 6%. From October 10, 2017 through April 26, 2018, the arrearages of $272,702 would earn interest at 6%. Finally, the circuit court calculated the current arrearages, before applying the credit, as $268,080. After subtracting the credit, the arrearages were $237,481.01, and they too would earn interest at 6%.

---

[3] The circuit court's letter opinion references wife's Exhibit E from the 2014 hearing and bases its calculations on the numbers and dates from that exhibit. Husband's attorney used those numbers to point out what he argued was a mathematical error.

- 7 -

Finally, wife requested attorney's fees for her efforts to collect arrearages. Husband argued that wife was not entitled to them because the PSA provided that each party would pay their own attorney's fees. Wife argued that Code § 20-78.2 allowed for attorney's fees in attempt to collect arrearages if the arrearages were greater than three months of support. The circuit court agreed. Noting the PSA, however, the circuit court limited its ruling to those fees accumulated in preparing for the April 26, 2018 hearing on arrearages and ability to pay.

Husband and wife both objected to the final order. Husband appealed to this Court.

### D. Proceedings Before This Court

In his appeal to this Court, husband argued, among other things, that the circuit court erred in denying his motion to declare DeLuca 1 void *ab initio* for lack of jurisdiction. Because DeLuca 1 was void, husband argued that this Court should, in addition to addressing his new assignments of error, reconsider his assignments of error from DeLuca 1.

After briefing and oral arguments, we issued an opinion, holding that a lower court is not the appropriate forum to attack the jurisdiction of a higher court. See DeLuca v. DeLuca, No. 1560-18-3 (Va. Ct. App. May 21, 2019) ("DeLuca 3"). Because husband's assignment of error addressed only the circuit court's authority to declare DeLuca 1 void, the validity of DeLuca 1 was not properly before us, and we did not address it. Consequently, we were bound by this Court's prior rulings in DeLuca 1, and we did not reconsider the issues decided in that opinion. Additionally, the outcome of many of husband's new assignments of error depended on the rulings in DeLuca 1.

After we issued our opinion in DeLuca 3, husband filed a motion in this Court to declare DeLuca 1 void *ab initio* due to a lack of subject matter jurisdiction. This Court granted husband's motion, withdrew its opinion in DeLuca 1, vacated its mandate, and dismissed the appeal. Subsequently, on our own motion, we withdrew our opinion in the current appeal,

- 8 -

DeLuca 3, in order to reconsider the issues in light of the Court declaring DeLuca 1 void *ab initio*.[4]

## II. ANALYSIS

### A. Husband's Assignments of Error

Husband assigns twelve errors to the circuit court's ruling. We address each of husband's assignments of error before addressing wife's assignments of cross-error.[5]

### 1. *Contempt (Assignment of Error 2)*

Husband argues that the circuit court erred by finding him in contempt because he did not willfully disobey the court order but, instead, he was financially unable to comply.

We review the circuit court's exercise of its contempt powers for an abuse of discretion. DHRI, Inc. v. Hanback, 288 Va. 249, 254 (2014). "A trial court may hold a support obligor in contempt for failure to pay where such failure is based on unwillingness, not inability, to pay." Barnhill v. Brooks, 15 Va. App. 696, 704 (1993).

In Barnhill, the support obligations exceeded the obligor's income, and, after borrowing money and filing a motion to reduce his obligations, the obligor stopped paying. 15 Va. App. at 704-05. The circuit court did not hold the obligor in contempt. On review, we determined that, "[a]lthough the trial court could, in its discretion, have ruled that the [obligor] should have paid at least a portion of the support due appellant, it did not so hold." Id. at 705.

Here, despite an average income between $10,000 and $11,000 per month, and a positive balance of $1,100 after all of his expenses (excluding spousal support) were paid, husband failed

---

[4] Because all issues were thoroughly briefed and argued before this panel, it was unnecessary to order additional briefing or argument.

[5] Because this Court has declared the DeLuca 1 opinion void *ab initio*, husband's first assignment of error, relating to the circuit court's authority to declare our Court's opinion void, is moot and we do not address it.

to pay *any* spousal support from March 21, 2016 through October 10, 2017. The circuit court also noted that husband paid his attorneys $3,000 per month, which could be reduced and, in combination with the $1,100 positive balance, used to meet at least part of his support obligations. The record supports the circuit court's finding that husband could have met at least a portion of the support due. As we held in <u>Barnhill</u>, it is within the circuit court's discretion to hold that a failure to pay at least some portion of the support due is willful disobedience of a court order. Thus, the circuit court did not err.

### 2. *Interpretation of the PSA (Assignments of Error 3, 5, & 7)*

Husband assigns three errors relating to the circuit court's interpretation of the PSA. "Property settlement agreements are contracts, and the rules of interpretation for contracts in general apply." <u>Recker v. Recker</u>, 48 Va. App. 188, 192 (2006). Thus, on appeal, we review a trial court's interpretation of a contract *de novo*. <u>Plunkett v. Plunkett</u>, 271 Va. 162, 166 (2006).

### a. Paragraph 4 – The Spousal Support Provision

On appeal, husband argues that the circuit court erred by ruling that his obligation under paragraph 4 of the PSA was an obligation to pay a monthly monetary sum to wife as opposed to an obligation for husband to provide a lifestyle for wife. Specifically, he argues that the contract language was ambiguous.

Paragraph 4 of the PSA provides, "[h]usband shall support [w]ife in the manner to which she is accustomed and is currently being supported, recognizing the need of [w]ife to educate and nurture [the] child."

When interpreting an agreement that "is unambiguous, its meaning and effect are questions of law. Ordinary words are given their ordinary meaning when constructing the contract." <u>Recker</u>, 48 Va. App. at 192. Moreover, it "is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning."

Cabral v. Cabral, 62 Va. App. 600, 609-10 (2013) (quoting TravCo Ins. Co. v. Ward, 284 Va. 547, 552 (2012)). "That meaning, of course, derives from the text as well as the context of the agreement." Id. at 610. When a contract is ambiguous, however, "the Court will look to parol evidence in order to determine the intent of the parties." Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 632 (2002). "Contract language is ambiguous when 'it may be understood in more than one way or when it refers to two or more things at the same time.'" Id. (quoting Granite State Ins. Co. v. Bottoms, 243 Va. 228, 234 (1992)). Nonetheless, a "contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." Id. (quoting TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119 (2002)).

Husband argues that "it is axiomatic that the language is ambiguous" because the circuit court had to have a hearing to discern the meaning of the language and that it was error to set a sum certain amount of support. We disagree. The agreement explicitly states that husband must support wife "in the manner to which she is accustomed and is *currently* being supported." (Emphasis added). Thus, the only thing for the circuit court to do was to "perform a retrospective analysis to determine whether or not [husband] has complied with this portion of the decree."

At trial, the circuit court concluded that at the time the parties entered the agreement in 2008, the parties were seeking to ensure that wife and the parties' child would live in the "manner as to which they were accustomed and currently being supported by [husband]." In order to determine exactly how wife was being supported, the circuit court looked to her lifestyle and the amount of support she received in the months leading up to the execution of the PSA. In the thirteen months immediately preceding the execution of the PSA, wife was accustomed to an upper-middle class lifestyle in central Virginia. During that same time, she received an average monthly payment of $4,373 from husband. We agree that the PSA is unambiguous and that the

plain and ordinary meaning of the language of the agreement required husband to pay a sum certain in monthly spousal support.

Husband argues as an alternative argument that the circuit court should have reduced that amount by half because $4,373 was the amount left in the parties' joint bank account after all expenses, and there was no evidence that the parties intended it to be for wife's sole use. Under either argument, he contends that the circuit court should have included husband's payment of the mortgage and other financial obligations in calculating the amount required to maintain wife's lifestyle. Husband assigned error only to the circuit court's classification of the spousal support obligation as a sum certain amount rather than an obligation to support a lifestyle. Husband's assignment of error does not address the circuit court's calculation of $4,373 as the amount of spousal support.[6] This Court will only consider those arguments relating to errors assigned by the party. Dudley v. Estate Life Ins. Co. of America, 220 Va. 343, 348 (1979) ("Elementary is the rule of appellate procedure that the scope of the argument on appeal is limited by the assignments of error.").

b. The need to "educate and nurture the minor child language"

Husband's assignment of error states that the circuit court "erred by failing to take into account the language of paragraph 4 of the [PSA] which states that the support of [wife] is in

---

[6] To the extent that these arguments may, under some interpretation, fit within the assignment of error, they are without merit. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Elliott v. Commonwealth, 277 Va. 457, 462 (2009). Here, the circuit court accepted wife's evidence, specifically Exhibit E, and testimony as to the support she was receiving at the time the parties signed the PSA. The circuit court was not required to accept husband's testimony or explanation of the evidence. Accordingly, the circuit court's judgment is supported by the evidence and is not plainly wrong.

The circuit court was also not wrong in treating the spousal support obligation as separate and apart from husband's other financial obligations under the agreement. The obligations were separately numbered and separately titled. None of the provisions contained language that referred to or incorporated other obligations or provisions.

consideration of 'the need of [wife] to educate and nurture the minor child' and at the time of trial the child was emancipated and not a minor." Husband argues, in support of his assignment of error, that the "trial court committed error by failing to rule upon [husband's] argument and specific motion to interpret" the PSA. This argument is premised on his claim that the circuit court did not address the issue in its letter opinion and then "summarily denied the motion [to reconsider] without explanation."

Assuming without deciding that the vague language of husband's assignment of error is sufficient to encompass his specific failure-to-rule argument, we conclude that his argument is without merit. Husband raised this issue during the April 15, 2014 hearing and in a motion to reconsider. When the circuit court issued its May 22, 2014 order, it included a ruling on husband's motion to reconsider. The circuit court specifically stated, "The motion to reconsider filed by [husband] on May 21, 2014[,] has been considered by the court, and it is overruled." Thus, the circuit court specifically considered and expressly ruled on arguments raised in the motion, including husband's argument relating to the language in paragraph 4. "Absent a statutory mandate, . . . a trial court is not required to give findings of fact and conclusions of law." Fitzgerald v. Commonwealth, 223 Va. 615, 628 (1982). Thus, the circuit court's failure to explain the reasons for its ruling does not provide grounds to argue that the circuit court failed to rule on the issue.

### c. Retirement pay as a credit against spousal support

Husband argues that wife's share of his retirement pay should be credited against his spousal support obligation. He also argues that the contract is ambiguous and that this Court must consider the evidence presented at the hearing to determine the intent of the parties.

A PSA is a contract "subject to the same rules of construction that apply to the interpretation of contracts generally." Jones v. Gates, 68 Va. App. 100, 105 (2017) (quoting

Southerland v. Estate of Southerland, 249 Va. 584, 588 (1995)). "The question for the court is what did the parties agree to as evidenced by their contract." Schuiling v. Harris, 286 Va. 187, 192 (2013) (quoting Wilson v. Holyfield, 227 Va. 184, 187 (1984)). "Where there is no ambiguity in the terms of a contract, we must construe it as written." Smith v. Smith, 3 Va. App. 510, 514 (1986). "Contracts are not rendered ambiguous merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement." Wilson, 227 Va. at 187.

Here the terms are clear and unambiguous. The two paragraphs at issue are entirely separate; they are separately numbered and separately titled. They do not follow immediately after each other, nor do they contain any language linking them together. Paragraph 4, which provides for spousal support, does not contain an end date, mention of a credit, or any reference to modification upon retirement or in any other circumstance. Paragraph 6, which provides for the distribution of retirement pay, does not contain any reference or link to paragraph 4. The language of paragraph 6 references wife's "legal share" and her entitlement based on the length of time she was in the marriage. This language suggests paragraph 6 is intended to be part of equitable distribution rather than a spousal support replacement.

Husband relies on McGuire v. McGuire, 10 Va. App. 248, 252 (1990), where this Court rejected the argument that a federal pension was part of an equitable distribution award and, as such, could not be considered when setting spousal support. That case is inapplicable here. In McGuire, the PSA allowed for modification of spousal support by proper motion to the court. Upon such proper motion, the court was to consider the statutory factors, which specifically direct a trial court to "consider the needs and financial resources of the parties including but not limited to income from all pension, profit sharing or retirement plans." Code § 20-107.1(E). The PSA here, however, prohibits modification except by agreement of the parties. The circuit

- 14 -

court was not exercising its discretion to modify support, and, unlike in <u>McGuire</u>, its only job was to interpret the PSA.  There was nothing in the PSA that explicitly, or even implicitly, provides for a credit.

Husband points to the circuit court's initial ruling that it was a "tortured construction" of the PSA for husband to pay more after retirement than before.  Wife will, in fact, get most of husband's pension.  Whatever the subjective fairness of the agreement may be for husband, he agreed to the PSA of his own free will.  We will not "relieve one of the consequences of a contract merely because it was unwise."  <u>Rogers v. Yourshaw</u>, 18 Va. App. 816, 823 (1994) (quoting <u>Derby v. Derby</u>, 8 Va. App. 19, 30 (1989)).  Nor can we "rewrite a contract simply because the contract may appear to reach an unfair result."  <u>Id.</u> (quoting <u>Kaufman v. Kaufman</u>, 7 Va. App. 488, 501 (1988)).  The parties entered this PSA; they chose and agreed to the words it contained.  Now they are bound by them.  There was no reference to a credit, and we will not read into the PSA language that will change the meaning of the words used by the parties.  <u>Wilson</u>, 227 Va. at 187.

3. *Circuit court's Use of Husband's Deployment Income (Assignment of Error 4)*

Husband argues that the circuit court improperly considered husband's income from his military deployment, which is higher than his regular income, in calculating spousal support.  He argues that the circuit court should instead consider his average income when he is not deployed.

Under the general statutory rules, a circuit court is required to consider many factors, including the income and financial resources of the parties, when calculating spousal support.  Code § 20-107.1(E).  The parties, however, can contract or stipulate to an award of spousal support, and where "that agreement is filed without objection prior to the entry of the final divorce decree, 'no decree or order directing the payment of support and maintenance for the spouse . . . shall be entered *except in accordance with that stipulation or contract*.'"  <u>Pendleton</u>

- 15 -

v. Pendelton, 22 Va. App. 503, 506 (1996) (alteration in original) (quoting Code § 20-109). Such an agreement limits the authority of the circuit court to set or modify support, except as provided for in the agreement. Id. at 507.

Here, the parties chose to contract for spousal support. According to the terms of the PSA, the spousal support is the amount needed to "support [w]ife in the manner to which she is accustomed and is currently being supported." Thus, under this language, the circuit court's authority was limited to considering only the manner wife was accustomed to and being supported in at the time the parties entered into the agreement. Husband's income at that time, deployed or not, was not relevant to that consideration. The circuit court's letter opinion reflects that it properly focused only on "the monetary support received by [wife] in 2007 and the lifestyle she had during that year." Husband's income did not factor into the circuit court's decision, and, therefore, the circuit court did not err.

### 4. *Awarding Support Arrears without a Reservation of Jurisdiction*
### *(Assignment of Error 6)*

Husband argues that the circuit court erred in awarding wife arrearages for support due prior to the entry of the final divorce decree because there was no specific reservation of jurisdiction in the final divorce decree. Specifically, he argues that without the reservation of jurisdiction, the decree of divorce became final after the twenty-one-day time period prescribed by Rule 1:1 had run and that the circuit court was without jurisdiction to alter its order.

Wife was not attempting to modify or alter the final decree of divorce. Instead, she was trying to enforce the spousal support provision of the PSA agreed to by the parties. "Valid marital agreements are favored and will be enforced by divorce courts when incorporated in a decree which orders the parties to comply with its terms." Doherty v. Doherty, 9 Va. App. 97, 99 (1989). "[S]pousal support payments exacted by a divorce decree become vested as they accrue and the trial court is without authority to make any change as to past due installments."

Id. at 100 (citing Richardson v. Moore, 217 Va. 422, 424 (1976)). "[W]ife's rights to past due installments became vested . . . when the final decree of divorce ordered the parties to comply with the terms of the marital agreement." Id.

Furthermore, this Court has rejected husband's exact argument in the context of child support cases.[7] In Voorhies v. Voorhies, No. 1729-00-4, at *2 (Va. Ct. App. July 10, 2001),[8] the parties entered into an agreement for spousal and child support, and that agreement was incorporated into the final decree of divorce. When the wife sought to recover arrearages that accrued prior to entry of the divorce decree, the circuit court held that it was without jurisdiction because more than twenty-one days had passed since the entry of the final decree. Id. at *5. We rejected that argument, holding that such a ruling would "retroactively nullify" the right to accrued support and would "be in derogation of the well established principle that court ordered support becomes vested when it accrues and the courts are without authority to make any changes with regards to arrearages." Id. at *6 (quoting Smith v. Smith, 4 Va. App. 148, 152 (1987)).

Like in child support cases, spousal support payments exacted by a divorce decree become vested when due. Thus, on January 3, 2013, when the final decree of divorce ordering husband to pay spousal support in compliance with the terms of the PSA was entered, wife's right to those payments vested. Because the PSA was incorporated into the final decree, wife had the ability to enforce her right to support via a contempt proceeding, as she did, or through a

---

[7] This Court has a history of rejecting arguments that would allow a spouse to retroactively free him or herself from paying accrued *pendente lite* arrearages. See Doherty, 9 Va. App. at 100 (rejecting arguments of estoppel and laches where wife sought past due *pendente lite* support after final decree had been entered); Smith v. Smith, 4 Va. App. 148 (1987) (finding that an order dismissing divorce action for lack of prosecution did not retroactively nullify right to accrued spousal support under *pendente lite* order).

[8] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Otey v. Commonwealth, 61 Va. App. 346, 350 n.3 (2012).

breach of contract proceeding. That the circuit court did not rule on the issue of arrearages or make a specific reservation of jurisdiction to address the arrearages does not prevent wife from enforcing the PSA against husband. Accordingly, we find the circuit court did not err.

5. *Application of the Credit to the Current Arrearages (Assignment of Error 8)*

Husband assigns error to the circuit court's ruling that the $30,598.99 credit applies to the current arrearages rather than to the arrearages in the May 22, 2014 order. On brief, husband incorporates his arguments for assignments of error six and nine. Assignment of error six relates to the circuit court's authority to award pre-divorce arrearages when there is no specific reservation in the decree. Assignment of error nine relates to the authority to award interest prior to the entry of the final contempt order.[9] These incorporated arguments do not relate to whether the circuit court had authority to apply the credit to an arrearage set out in a prior order, which is the error assigned here. Accordingly, we will not consider these arguments here. See <u>Teleguz v. Commonwealth</u>, 273 Va. 458, 473 (2007) (ruling an assignment of error was abandoned because the argument did not relate to the assignment of error).

To the extent husband attempts to make an additional argument beyond those expressly incorporated arguments, it is a single, conclusory sentence restating the assignment of error and stating that the error is not harmless. This additional sentence includes no citations or any legal authority as required by Rule 5A:20. "Such a statement does not constitute an argument in support of the error assigned." <u>Teleguz</u>, 273 Va. at 473. Accordingly, this assignment of error is abandoned.

---

[9] The argument in assignment of error nine mentions that this Court determined it did not have subject matter jurisdiction in <u>DeLuca 2</u>. But there is no explanation of how that relates to or affects this assignment of error.

### 6. *Interest on the Arrearages Prior to the Entry of the Final Contempt Order (Assignment of Error 9)*

Husband argues that the circuit court erred by awarding interest on the arrearages. Specifically, he argues that DeLuca 1 was void *ab initio* and not a valid final order and that each of the orders setting the arrearages were temporary orders. Additionally, he argues that wife did not request prejudgment interest in her pleadings to the court.[10]

Even if the orders setting the arrearages were not final orders, there is nothing in Code § 20-78.2, upon which the circuit court relied, that requires a *final* order to award interest on arrearages. Code § 20-78.2 provides that "an order or decree of support for a spouse . . . under the provisions of this chapter or §§ 20-107.1 through 20-109 shall constitute a final judgment for any sum or sums in arrears." Thus, Code § 20-78.2 provides a mechanism for treating an order or decree that sets spousal support as a final judgment for interest purposes.

Although the orders in this case were entered in contempt proceedings, and not under the provisions listed in Code § 20-78.2, husband's argument neglects the fact that the divorce decree incorporated the PSA, which did order spousal support and was not entered in the contempt proceedings.

Our interpretation is supported by both case precedent and other Virginia statutes. Under Virginia law, support obligations act as final judgments by operation of law when they become due and go unpaid. Kahn v. McNicholas, 67 Va. App. 215, 230-31 (2017). Indeed, divorce decrees ordering spousal support require notice of that fact. Code § 20-107.1(H)(6) (An order directing payment of spousal support must contain notice that "the support obligation as it becomes due and unpaid creates a judgment by operation of law."). Because an unpaid support

---

[10] Husband appears to make an argument about the circuit court's authority to award *pendente lite* support during the pendency of these proceedings. To the extent husband's argument is that these arrearages are *pendente lite* support, we note that the final decree of divorce had already been entered prior to the proceedings in this case.

obligation is a judgment by operation of law, "the general rule is that in the absence of factors making it inequitable, interest should be assessed on unpaid installments of alimony from the date they mature or become due until the date they are paid." Alig v. Alig, 220 Va. 80, 85 (1979). Arrearages are support obligations that are due and have gone unpaid. Therefore, the circuit court did not err in ordering interest on the arrearages prior to the final order in the contempt proceedings.

### 7. *Monthly Arrearage Payment (Assignment of Error 10)*

Husband argues that the "trial court erred in setting forth arrearage payment of $2,000 per month as [husband] has shown he cannot financially sustain such payments . . . ." We disagree.

Issues relating to the circuit court's enforcement of a final decree's support provisions are reviewed under an abuse of discretion standard. See Zedan v. Westheim, 62 Va. App. 39, 44-45 (2013) (applying an abuse of discretion standard to issues relating to the enforcement of child support arrearages). The circuit court's factual findings relating to this issue are binding on us unless they are plainly wrong. Milam v. Milam, 65 Va. App. 439, 462 (2015).

Husband contends that the circuit court found he has a monthly income of $7,551. He argues that his financial obligation to wife is $7,025.72, and thus he is financially unable to pay an additional $2,000 per month towards the arrearages. Husband misinterprets the circuit court's opinion. The circuit court determined husband's income *from employment* over eighteen months was $135,926, and thus his average *earned* income was $7,551 per month. When the circuit court set the arrearages, it considered "this earned income along with the current monthly income" from his retirement pay (approximately $4,600). Under these numbers, husband's average monthly income is closer to an average above $12,000 per month. These figures come directly from an income spreadsheet husband entered into evidence. Although the spreadsheet

does show his income varies month to month, it ranges from a low of $7,332.40 up to $22,218.82 per month.

Moreover, at the hearing, husband testified that he owed wife approximately $7,700 per month and he "would ask [the court] to try and keep that to something under $8,500 per month" after arrearages were added or he would not be able to pay. Husband, by his own testimony, suggests that he can afford up to $800 in arrearages payments, which is significantly more than the several hundred dollars per month his attorney suggests he could afford. The circuit court is entitled to consider the evidence, including husband's credibility, and determine the weight to be afforded to each piece of the evidence. See Parham v. Commonwealth, 64 Va. App. 560, 565 (2015) ("[D]etermining the credibility of the witnesses and the weight afforded to the testimony of those witnesses are matters left to the trier of fact."). Given the evidence of husband's income from husband's own exhibit and his testimony admitting he can pay more than he argued to the circuit court, we cannot say the circuit court erred in setting the arrearage payments at $2,000 per month.

8. *Denial of an Extension of Time to File Pleadings (Assignment of Error 11)*

It is within the broad discretion of the circuit court to determine whether to grant an extension of time and permit a late filing. Rule 1:9. "Whether such discretion has been properly exercised will, of course, depend upon the circumstances of the particular case." Westfall v. Westfall, 196 Va. 97, 103 (1954). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Turner v. Commonwealth, 65 Va. App. 312, 327 (2015) (quoting Grattan v. Commonwealth, 278 Va. 602, 620 (2009)). "In determining whether a trial court has abused its discretion by granting or denying leave to file a late pleading, the existence or absence of good cause for the delay, together with other compelling circumstances, control the determination." Emrich v. Emrich, 9 Va. App. 288, 292 (1989). The circuit court should

consider, among other things, the prejudice to opposing party, the good faith of the moving

party, existence of a meritorious claim or defense, and the extenuating circumstances. Id.

Husband lists the relevant factors, but he does not explain how or why each factor weighs

in his favor. Our review of the record finds nothing that suggests the circuit court abused its

discretion. The parties had been litigating this case for four-and-a-half years at the time of the

hearing. It had been before this Court twice. The circuit court had long since ruled on the

contract interpretation issues. An order incorporating past orders into a new cause of action adds

nothing to the case. Despite husband's claims that the declaratory judgment action would be

necessary to allow appeal of the contract issues if the circuit court did not hold him in contempt,

we note that wife's declaratory judgment action was already before the circuit court. Given the

circumstances, we cannot say the circuit court abused its discretion in denying husband's motion.

9. *Attorney's Fees (Assignment of Error 12)*

Husband argues that the circuit court erred by awarding wife attorney's fees because their

PSA provided that each party would pay its own fees. We agree.

Parties may shift responsibility for attorney's fees through contractual provisions. Jones,

68 Va. App. at 106. Code § 20-109(C) addresses such provisions in divorce cases:

> In suits for divorce, annulment and separate maintenance . . . if a
> stipulation or contract signed by the party to whom such relief
> might otherwise be awarded is filed before entry of a final decree,
> no decree or order directing the payment of . . . counsel fee . . .
> shall be entered except in accordance with that stipulation or
> contract.

If a PSA contains an attorney's fee provision, the court must follow the terms of that agreement.

Jones, 68 Va. App. at 106.

Paragraph 17 of the PSA provides that "[e]ach party shall pay his or her attorney's fees

and that parties shall divide equally the costs of any uncontested divorce proceedings filed by

either [h]usband or [w]ife." The parties contemplated the issue of attorney's fees and

determined, as evidenced by the plain language of their agreement, that each party shall be responsible for his or her own attorney's fees. The parties could have, but chose not to, include a provision for attorney's fees in the case of enforcement. See, e.g., Jones, 68 Va. App. at 106-07 (including a provision to allow attorney's fees for successfully defending an action for enforcement); Pellegrin v. Pellegrin, 31 Va. App. 753, 767-68 (2000) (allowing attorney's fees for a motion to show cause as an "action for enforcement" under the PSA). Nor did they specify that the fee provision was limited to services pertaining to the final decree of divorce. We cannot add language for them. See Wilson, 227 Va. at 187. Therefore, the circuit court is reversed and the award of attorney's fees to wife is vacated.

### B. Wife's Assignments of Cross-Error

#### 1. *State and Federal Tax Issues (Assignments of Cross-Error 1 & 2)*

Wife argues that the circuit court improperly addressed the issue of whether husband was required to pay state and federal taxes because the issue was not properly before the court. She also contends that the circuit court modified its May 22, 2014 ruling, which, she argues, ordered husband to pay the taxes. We disagree.

Although the issue of tax liability was not expressly raised in the pleadings,[11] all three of wife's motions to show cause put at issue the amount husband owed wife in arrearages. The May 22, 2014 order required husband to pay wife "$4,373.00 net per month." Throughout the proceedings, including in wife's motion to reconsider, which was before the circuit court at the time the tax issue arose, wife emphasized the use of the word "net." Thus, in order for the circuit court to properly calculate arrearages, specifically whether husband was required to pay more

---

[11] We also note that the September 29, 2016 order, which dealt with the issues from the August 11, 2015 hearing, lists a motion "requesting the [trial c]ourt issue a Rule to Show Cause and hold [wife] in contempt of court for claiming certain federal and state tax credits." While it does not appear that the circuit court issued the rule to show cause, it does show that the issue was before the court and necessary to the arrearage issue.

than the $4,373 in order to cover the tax liability, it was necessary for the circuit court to address the issue.

Furthermore, the circuit court did not *modify* a prior order. Rather it *interpreted* its May 22, 2014 order, and it is a "well-established principle in our jurisprudence . . . that circuit courts have the authority to interpret their own orders." Roe v. Commonwealth, 271 Va. 453, 457 (2006). "We defer to the trial court's interpretation of its own order," Leitao v. Commonwealth, 39 Va. App. 435, 438 (2002), though that interpretation must be reasonable, Roe, 271 Va. at 458.

The May 22, 2014 order was prepared by wife. The proposed order stated husband must pay "$4,373.00 net per month after taxes." Regarding arrearages, the order stated husband had failed to pay "in the net amount after taxes of $121,976.00." Prior to entering the order, the circuit court specifically crossed out "after taxes" in both places and clearly and specifically informed both parties it had done so.[12] These edits demonstrate the circuit court did not, in fact, order husband to pay the taxes on the spousal support. Wife contends that the word "net" must mean something. We agree, but by crossing out "after taxes," the circuit court has told us what it does not mean. Moreover, during the hearing on the amount of spousal support, wife expressly asked the circuit court for a higher amount of support in order to cover the taxes, and the circuit court refused. Thus, the circuit court did not improperly modify its May 22, 2014 order.

### 2. *Arrearage Correction (Assignment of Cross-Error 3)*

Wife argues the circuit court erred by crediting husband $30,598.99 for a mathematical error because husband did not object to the miscalculation when it was made and that the May 22, 2014 order with the alleged error is a final order that was affirmed on appeal.

---

[12] The order ultimately entered by the circuit court is the order presented by husband. The circuit court's edits are handwritten on the order.

"[U]nder Rule 1:1, 'final judgments . . . remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer.'" Super Fresh Food Mkts. of Va. v. Ruffin, 263 Va. 555, 560 (2002) (quoting Rule 1:1). This rule is not applicable, however, prior to the entry of a final judgment. Id. at 561.

The May 22, 2014 order, which contains the mathematical error, took the issue of contempt under advisement, and thus is not final because it did not dispose of the entire action. See id. at 560 ("In general terms, a final judgment is one which disposes of the entire action and leaves nothing to be done except the ministerial superintendence of execution of the judgment."). Although the May 22, 2014 order was initially treated as a final order and affirmed on appeal, this Court has since granted a motion declaring its opinion and mandate void *ab initio* because the May 22, 2014 order was not a final order and we lacked subject matter jurisdiction over the appeal. Thus, the May 22, 2014 order was not a final order, and the circuit court retained jurisdiction to modify its rulings therein, including the calculation of arrearages.

### III. CONCLUSION

For the foregoing reasons, we reverse and vacate the circuit court's award of attorney's fees to wife. The circuit court is affirmed on all other issues.

Affirmed in part, reversed in part.